## No. 731.

MEYER, WEIS & CO. vs. WILLIAM T. ATKINS.

Novation is not presumed, but if the surrounding circumstances clearly indicate that the intention of the parties was to novate a debt, it will be so held.

After the dissolution of a commercial partnership, the power of its former members to bind each other by note, can only arise by express mandate.

APPEAL from the Fourteenth Judicial District Court, parish of Ouachita. *Parsons*, J.

*R. W. & R. Richardson*, for plaintiffs and appellees.

*W. W. Farmer*, for defendant.

The opinion of the court was delivered by

DEBLANC, J. Defendant is sued on a note signed by D. B. Trousdale, and indorsed by Miss E. A. Trousdale and I. Lee Pettit. That note does not bear the signature of defendant, and, on mere inspection of its form and recitals, no one could imagine that Atkins is bound *in solido* for its amount, either as drawer, indorser, or otherwise.

Plaintiffs allege that said note was subscribed and delivered by the commercial firm heretofore trading in Monroe under the style of "D. B. Trousdale," and composed of said Trousdale, Atkins, and Pettit, for a claim due them by said firm. The existence of that partnership, and—

while it existed—its liability to plaintiffs for an account, now represented by the note sued on, are acknowledged by defendant.

He contends, however, that the original claim of plaintiffs against their partnership has been novated, and that, in lieu of that claim, they have accepted another, a different obligation—a note secured by indorsements and mortgage.

" Novation is not presumed; to convert a partnership debt into the separate debt of the partners, the intention to do so must clearly appear. There must be a deliberate and mutual assent of creditor and debtor to such conversion. Nay, more; a partnership creditor may take the separate liability of a partner, without *necessarily* extinguishing the partnership liability. In such cases courts will look to the parties' intention, as deducible from all the circumstances." 6 An. 521.

In the perusal of this record, our attention has stumbled from exception to exception.

To the litigant, the law is a weapon or a shield; to the court, a landmark and a guide. Its rules should be neither enlarged nor contracted. Justice would be but an empty name if a judge could hesitate to remove a technicality to seek the parties' intention, to ascertain what was proposed and what accepted, the character of the proposition, the character of the acceptance; to link together the circumstances, the motives, the causes which have united two or more wills on a common purpose.

Were it necessary to do so, for the enforcement or protection of the parties' rights, we would have discussed and passed upon the validity or invalidity of their exceptions; but, whether we consider or disregard that part of the evidence which was objected to, we can, it seems, reach but one conclusion.

What are the facts? A commercial partnership was formed in Monroe; its style was " D. B. Trousdale;" the members who composed it are those we have already mentioned. It was dissolved in the month of December, 1872, and, when dissolved, was indebted to only two parties, one Bloom, and plaintiffs firm. Those creditors were immediately informed of the dissolution of said partnership.

It was after that dissolution, after they had been informed of that fact, that Atkins proposed to give them, in settlement of their claim, a note to be executed by Trousdale and secured by mortgage on his, defendant's, land. Plaintiffs wrote to him to obtain his consent to indorse the note alluded to. This he positively refused to do, and replied " *that he would give nothing more than the mortgage.*"

The note was subscribed, the mortgage granted. In form and in substance they are the note and mortgage proposed by Atkins. He sent them to plaintiffs, who took them without objection, brought suit on them, and,

in conformity with Atkins's agreement and their tacit acceptance of that agreement, prayed for and obtained a judgment ordering, as to him, the sale of the mortgaged land, and condemning, *in solido*, the drawer and indorsers of the note to pay its amount.

Their counsel were not informed when they brought that suit that Atkins had been a member of the firm of D. B. Trousdale. Had they been aware of it, he would have been sued; but, beyond the mortgage, he was not liable, and could not be personally held for any balance of the debt in excess of the proceeds of the mortgaged property. Their counsel's course was the only legal course that could have been pursued under the special circumstances which surround this case.

The partnership was bound for plaintiffs' claim. Until the note and the mortgage were taken by them, the partners were responsible *in solido* for the payment of said debt; but how can it be justly contended that now the partnership, or those who composed it, are responsible, in a capacity which had ceased to exist before the date of the note and of the mortgage? Up to December, 1872, the signature "D. B. Trousdale" was both that of a partner and the partnership; from that time, to the knowledge of plaintiffs, it was the signature of the individual.

A partner's power to bind his copartners by note or by acknowledgment, or to use the social name, ceases with the dissolution. Any subsequent power is derived, not from the previous relations of the parties as partners, but from a new contract, one of mandate, and that must be express and special. A confession of judgment, after the dissolution, binds only the party making it. 2 An. 772; 8 L. 568; 5 R. R. 174; 6 R. R. 70; 4 An. 276; Edwards on Bills and Notes, p. 113.

"The partnership having been dissolved, and the proper notice thereof given, the presumed agency of a partner to bind the firm while acting during the scope of the business, is thereby revoked, and he can make no new promise or engagement in the name of the firm, even though he only changes, without increasing, the prior obligations of the partners. The power to settle and adjust the concerns of the firm does not carry with it the authority to sign an account stated, to indorse, or renew a note in the name of the partnership." Edwards on Bills and Notes, p. 117 and 118.

The partnership had been a failure; its safe and portfolio were empty; its credit was lost, and, to its creditors, the note, with its indorsements and the mortgage, were as unexpected wrecks cast to the shore by the sea after the disaster. They renounced the barren solidarity of an insolvent partnership for the personal security of each of the partners.

They could have enforced their claim against all or any one of the partners. This we admit; but, during the litigation, the debtors might have so protected their property against it, that the litigation would have

been as fruitless as expensive to the creditors, who, in their own interest, have exchanged an account for a note, a chance for a reality.

There is not, on or in that note, a sign, an expression, indicating the least intention of reserving the original liability of the partnership, or to attach to the new obligation the solidarity abandoned or destroyed by the last transaction, which, if not expressly accepted, was ratified by the creditors.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be and it is hereby annulled, avoided, and reversed. It is further ordered, adjudged, and decreed that plaintiffs' demand be and it is hereby rejected at their costs in both courts.