On Rehearing.
MONROE, J.
A rehearing was granted in this case because the court doubted whether, upon the facts presented, two -former members of an ordinary partnership, that had been dissolved, should be held liable on a note issued in the name of the firm, by another former member, and without their knowledge; and a re-examination of the record has converted the doubt into a conviction that they cannot be so held.
The facts are as follows: The E. O. Drew Investment Company was an ordinary partnership, composed of Drew, Blanks, Parker, and Reynolds, and it kept its account for a number of years in the Merchants’ & Farmers’ Bank, of which Blanks was president ■ and Parker vice president. Drew, in general, managed the business — drawing checks, making notes, attending to affairs in the office, etc. — ‘but Blanks took part, more or less, in transactions with the bank, though to what extent the record does not inform us. It was, however, perhaps, due to his influence that the account of the firm was generally overdrawn. On October 23, 1907, the firm was dissolved, by consent; the understanding of the parties being that Drew and Blanks were to convert the assets into money as ranidlv *1043 •as they could, and apply the proceeds to the payment of the debt, in the form of an over•draft, due the bank, and, in the meanwhile, that Drew was to pay, from the funds collected, or, possibly, 'by checks against the overdrawn account, some outstanding debts, amounting to less than $500, and the expense of an office, as, also, a small salary to himself — the employes of the firm being discharged. It was well understood that no obligations were to be created in the line of business save when necessary to make a sale, ■and it is not asserted that any obligations of that kind were created. Some 16 or 17 months after the dissolution, some other banking •concern bought a majority of the stock of the Merchants’ & Farmers’ Bank, changed the name to that of Bank of Monroe, and placed it under different control; Blanks, however, retaining some stock and being made vice president, and Parker (also retaining some stock) being made a director. In selling his stock (or the greater part of It) to the new concern, Blanks appears to have guaranteed some of the accounts and, among them, that of the E. 0. Drew Investment Company (guaranteed to the extent •55 per cent.), and the new cashier, who aft-erwards became president of the bank, began at once trying to reduce them to something definite and tangible. In that situation, Blanks executed the note here sued on, by way of liquidating the overdraft account •of the Drew Company, signing it, “The E. C. Investment Company, by R. B. Blanks, Treas.” He could hardly have .been the treasurer of .the company, at any time, for there was only an ordinary partnership, and, even if he had held such a position, the bank had no reason to suppose, so far as "we can see, that a treasurer would have authority to make notes in the name of the company by which he was employed. It is not asserted, or pretended, that either Drew or Reynolds, the defendants now before the court, authorized the giving of the note, or knew anything about it until this suit was brought. On the contrary, the president of the bank, after the note was given, endeavored to get them to give notes in settlement of what he referred to as the account or overdraft, and Drew expressed his willingness to join his former partners in such a note, but Reynolds declined to give a note of any kind.
Civ. Code, art. 2872, referring to ordinary partners, provides:
“Art. 2872. * * * And no one of them can bind his partners, unless they have given him power so to do, either special or by the articles of partnership ”
And, in regard to the authority of a partner, after the dissolution of the partnership, this court has said:
“The partner’s power to bind his copartners, by note or acknowledgment, or to use the social name, ceases with dissolution. Any subsequent power is derived, not from previous relations of the parties, as partners, but from a new contract, one of mandate.” Meyer-Weis & Co. v. Atkins, 29 La. Ann. 586.
“After the termination of a partnership, no admission or acknowledgment, by one of the partners, of the correctness of an account, made before the dissolution of the partnership, is legal evidence against the other members of the firm.” Conery v. Hayes, 19 La. Ann. 325.
“After the dissolution of the partnership, neither partner has authority, without special mandate so to do, to bind his former partners, either in the renewal of a partnership debt, the imposition of a new obligation on it, or to in any manner vary the form or character of the obligation already existing.” Dodd, Brown & Co. v. Bishop, 30 La. Ann. 1180. See, also, Vancleave v. Nelson, 49 La. Ann. 621, 21 South. 734.
Counsel for plaintiff say that the note was given to close an account; that the account is in the record; and that, if plaintiff is not entitled to judgment on the note, it ought to have judgment on the account. The account is in the record, however, in spite of defendants’ objection that there is no allegation of the petition authorizing its admission, which appears to us to have been well taken, since this is a suit on the note, and not on the account. Another objection was that the cor- *1045 neatness of the account had not been shown, which also appears to have Deen well taken, •since defendant produced a statement of the account of the Drew Company, made by the cashier, at the time, of the Merchants’ & Farmers’ Bank, showing that between January 14, 1904, and April 26, 1905, the firm was ■debited with $42,660.92, whereas in the statement of account filed by plaintiff the amount •debited during that period is $94,804.63, a ■ difference of over $50,000. Being asked wheth•er he was able to explain the discrepancy, the witness answered that he was not. So far, therefore, from its being shown that the account is correct, it seems to us to be affirmatively shown to be incorrect. Defendant’s next contention is that the acts of the Drew ■Company did not constitute a dissolution of ■the partnership, and, if they did, that no notice was given to the bank, and that the members of the firm continued to be liable for what was done in the firm’s name. We find no conflict in the evidence on the subject'of the dissolution of the firm. There were four partners; they were all present; and the three who have testified say that they agreed to dissolve, and did dissolve.
There is no evidence to the contrary; and we think the dissolution is established. The question how far the defendant may be liable for other notes, made in the name of the firm, between October 23, 1905, and May 25, 1907, is not just now before us for decision. During that period however, Blanks; a member of the dissolved firm was president of the bank, and Parker, another member, was vice president, and, when a month or two after the bank had passed into the hands of the present owners the note here sued on was made, Blanks was vice president of the bank, and Parker a member of the board of directors. Mr. Kilpatrick, who was president of the bank when the case was tried, and had been its cashier since the date of its reorganization, does not intimate, in his testimony, that he did not know of the dissolution of the firm. He does say that Blanks gave the note at his request, and that Parker was informed of the giving, but that for some reason, not explained, Drew and Reynolds were not informed, and that during several months after the note had been given he endeavored to get them to close the “account, or overdraft,” as he continued to call the debt, by giving their notes, or in some other way. If, however, he had considered that the note given by Blanks was the note of the firm, bound all its members, and closed its account, it appears to us that he put himself to a good deal of unnecessary trouble, and, as his testimony proves the contrary, we will not impute to him such lack of intelligence, but will rather assume that he was aware that the note held by the bank was of no value, so far as the former partners, other than Blanks, who had signed it, were concerned.
The third, and last contention of the learned counsel for the bank is that conceding that the firm was dissolved, and that the bank knew it, the note was still good, because Blanks was authorized to make it, in his capacity as-liquidator. We think not. He had no other authority, as liquidator, than such as was conferred on him, expressly or impliedly, by his copartners, and that did not include the authority to bind them by the giving of a note.
For the reasons thus given we are of opinion that plaintiff can take nothing by this suit.
It is therefore ordered, adjudged, and decreed that the decree heretofore rendered in this case be set aside; that the judgment appealed from be annulled, avoided, and reversed; and that there now be judgment in favor of defendant Emanuel <3. Drew, and against the plaintiff, Bank of Monroe, reject *1047 ing the demand of the hank and dismissing this suit, at its cost, m both courts, without prejudice, however, to its right to bring suit against defendant on the account or overdraft of the E. 0. l)rew Investment Company.
BREAUX, O. X, dissents.