## No. 13,138.

WILLIAM BRINKHAUS VS. ALFRED PAVY, CLERK, ET AL.; AND S. GUMBEL & CO. VS. M. P. COLOMB. (CONSOLIDATED.)

51 1327<br>104 221

### SYLLABUS.

1.  NOVATION.—Plaintiffs did not novate their claim by accepting a second mortgage, which included the balance due them on a first mortgage. They continued to hold possession of the notes secured by the first mortgage.
2.  The *onus* of proof was with the debtor to sustain the plea that they retained these notes without right. The proof fails to sustain the contention of defendant on this point.
3.  IMPUTATION OF PAYMENT.—Plaintiffs stipulated in their mortgage that they would have the right to impute payment as they chose. This stipulation is binding, but it did not enable plaintiffs to increase the amount due on the first note at the time the second mortgage was given.

ON APPEAL from the Eleventh Judicial District Court for the Parish of St. Landry. *Dupre, J.*

*E. D. Estilette* for Wm. Brinkhaus and M. P. Colomb, Appellees.

*Saunders & Miller* and *Kenneth Baillio* for S. Gumbel & Co., Appellants.

Argued and submitted May 1, 1899.
Opinion handed down May 15, 1899.
Rehearing refused, reasons assigned, June 12, 1899.

The opinion of the court was delivered by

BREAUX, J.   Two creditors of the defendant, whose claims are secured as to their payment by mortgage, claim priority in rank over the property mortgaged, and in this suit the rank of these mortgages is to be determined.

Gumbel & Co. were the commission merchants of the defendant for many years.   They became the holders of promissory notes dated March 25th, 1892, representing thirty-six hundred dollars, bearing interest and signed by defendant Colomb, as maker, payable respectively in January and February, 1893, identified with an act of mortgage of the same date as the date of the notes.

Gumbel & Co. retained the right, expressed in the mortgage deed, of applying the net proceeds of defendant's crop "and of all products shipped and of payments of money to the payment of any indebtedness which may now be due, or which may hereafter become due to the said mortgagees by the said mortgagor's open account."

In April of 1892, Wm. Brinkhaus took a mortgage on defendant's property, *i. e.,* the same property which was mortgaged to plaintiff (Gumbel & Co.) in March preceeding, as security for the payment of the sum of two thousand and thirty-one and 75-100 dollars, and interest.

The defendant, (Colomb,) on February 5th, 1894, executed another mortgage to plaintiffs (Gumbel & Co.) for the sum of twenty-one hundred dollars.   The act of mortgage covered a lien on the crop for that year.   The amount of the mortgage was payable on the 1st of January.

The first mortgage of plaintiffs (Gumbel & Co.) is first in rank, unless Brinkhause, who holds the second mortgage in order of date, sustains his position here that plaintiffs (Gumbel & Co.) have con-

sented to a novation or have received payment of their first mortgage growing out of the imputation of payment as made.

In one of their petitions plaintiffs (Gumbel & Co.) reserve their rights of action on their second mortgage and claim exclusively on their first mortgage. In another of their pleadings they aver that the note for $2,100 and the mortgage by which it is secured, are paid under the imputation of payment to be made by them.

The following is a narrative of the facts touching the question of novation and of imputation of payment:

In March, 1894, Colomb, the defendant, who resides at some distance in the country, came to the city of New Orleans to make a settlement with plaintiffs (Gumbel & Co.), and to get them to make him a loan of money to enable him to cultivate his crop. He asked plaintiffs to let him know the amount of his indebtedness. The amount was about $1,100. ,

Here, thede fendant swore that plaintiffs (Gumbel & Co.) asked him to give them a mortgage for the balance he owed and for an advance which they finally consented to make of one thousand dollars. Then defendant (Colomb) executed a mortgage for twenty-one hundred dollars. In this mortgage it was stipulated that Gumbel & Co. would have the right at such time as they should choose to impute the proceeds of the mortgagor's crop consigned by him to any debt then or thereafter due by the mortgagor: A stipulation similar to that contained in the act of mortgage of the year 1892.

At this point the testimony greatly varies.

Colomb, the defendant, swore that plaintiff agreed to merge the old debt into the new and to accept the second mortgage in lieu of the first. He was examined as a witness on two different days. On the first day he swore as follows:

Q. "On that day, did Mr. Gumbel ask you anything about what mortgages were on your property?" (This was the day on which the mortgage was executed.)

A. "No, sir; if he did, I don't recollect it."

Q. "On the day that you had the conversation and executed the mortgage before George C. Preot, did you notify Mr. Gumbel that William Brinkhaus had a mortgage on your property?"

A. "No, sir; I did not tell him."

Q. "How long after that did Mr. Gumbel or any member of the

84

firm ascertain that Mr. Brinkhaus had a mortgage on your property?"

A. "That I cannot answer."

On the second day he swore:

"He (Gumbel, Sr.) said to me that he did not care to make any advances to me because, he said, he had learned that I had given a mortgage on my property to Mr. Brinkhaus. Then I returned the next day with Mr. Moise. Then I said to him, 'cannot you make me advances with which to make my crop?' He said: 'I don't care much to do so.' I said to him: 'I expect, although I do owe Brinkhaus, to be able to make a crop to pay you.'"

This testimony is not consistent, and we, in consequence, arrived at the conclusion that plaintiffs knew nothing of the Brinkhaus mortgage. This is the only testimony regarding notice of a prior mortgage.

One of the firm of Gumbel & Co., on this subject, swore that the agreement was arrived at with the distinct understanding that the plaintiffs (Gumbel & Co.) would accept a mortgage of two thousand, one hundred dollars "which would rank the same as our previous mortgage" and that at the time nothing was said by defendant (Colomb) about a mortgage held by Brinkhaus, of which plaintiffs (Gumbel & Co.) had never heard.

The other member of plaintiff's firm swore that at the time his firm took the mortgage of February, 1894, they were led to believe by defendant (Colomb) that it would be the mortgage first in rank, and that the act was signed with that understanding; but that much to their surprise, about a week afterwards they received a mortgage certificate showing that there was another mortgage anterior to their last mortgage.

With reference to the consideration for which this mortgage was executed, this witness testified that the defendant (Colomb) owed plaintiffs (Gumbel & Co.) about one thousand one hundred dollars, and with the one thousand dollars advanced at the time the last mortgage was executed, was the only amount due them.

He also swore that they agreed with defendant to grant him an additional amount of one thousand dollars, taking a note of twenty-one hundred dollars, provided the records, as they existed when they took the preceding notes, were clear.

This witness also testified: "Our agreement was to hold them until

the recordation of the $2100 mortgage, to see whether the records were clear. If they were, we would return them; if they were not, we would hold them."

It follows: though plaintiffs did consent to accept a second mortgage in lieu of the first, it was done without a full knowledge of the facts.

Had Bumbel & Co.'s second mortgage been first in rank as the first mortgage was, the notes, in our view, would have been extinguished.

A number of letters were introduced in evidence. In one of these letters the defendant (Colomb) requested plaintiffs (Gumbel & Co.) to send him the notes identified with the first act of mortgage. Plaintiffs, in answer, stated to him that they had been recently notified by a certificate of mortgage that there was a mortgage prior to their last mortgage, and that, in consequence, they refused to return these notes.

It also appears that plaintiffs tendered an itemized account to the defendant at different times, and each had a memorandum added, setting forth the mortgage notes held by plaintiffs against the defendant.

For instance, the account rendered March 15th, 1894, after showing balance on open account to credit of defendant of four thousand six hundred and seventy-one 84-100 dollars, has the following subjoined:

"We hold your mortgage notes as follows:

| | | |
|---|---|---|
| "Due 1-4 January, 1893.....................$1,800 00 | | |
| "Interest 8% maturity (1 year 70 days)...... 172 00 | $1,972 00 | |
| "Due 15-18 February, 1893 ................ 1,800 00 | | |
| "Interest 8% maturity (1 year 25 days)...... 154 00 | 1,954 00 | |
| "Due 1-4 February, 1895, interest 8%, maturity | 2,100 00 | |
| | $6,026 00" | |

All the other statements rendered by plaintiffs to defendant are substantially the same. Colomb, the defendant, never in any manner objected to any of the statements at any time prior to 1897.

In April, 1895, plaintiffs wrote the following letter to the defendant:

"M. P. Colomb:

"DEAR SIR—As requested in your favor of the 7th inst., we enclose statement of your account showing a balance in your favor of

$4,671.15 to be accounted for. We are holding your three mortgage
notes, two for $1,800 and one for $2,100, amounting with interest to
date to $6,374.14. You therefore owe us net $1,702.73 at this date
and to be accounted for." * * * * * * * * * * *

(Signed by Plaintiffs.)

This corresponds to a cent with balance shown on open account as
due by defendant, and amount due on notes held by plaintiffs and
due by defendant.

The following is an excerpt from another letter written in 1896:
"We enclose statement of your account showing that we are holding
your mortgage notes with interest to date amounting to $7,055.47,.
against which you have a credit balance of $5,571.86."

Leaving a balance due to plaintiff of $1,483.61 as per the state-
ments. This was the amount claimed in the original petition.

Plaintiffs subsequently amended their petition claiming that by
error they at first claimed the amount just stated. Correcting the
error, they alleged in a supplemental petition that the amount due
was two thousand and three dollars.

That after imputing all of Colomb, defendant's credits, there re-
mained due by him on the two mortgage notes for eighteen hundred
dollars, the sum last stated; and plaintiffs averred that the mortgagor,
defendant Colomb, had no right to the imputation of his credits, pre-
viously received, to the two notes of eighteen hundred dollars instead
of to the credit of the note of two thousand one hundred dollars; that
the right to impute credits was vested in the mortgagees by the con-
tract of mortgage of February 5th, 1894, and that they could not be
controlled in the exercise of their right of imputation by Colomb or
any of his creditors.

The foregoing are in the main the issues of fact in the case.

The judge of the District Court rendered a judgment in favor of
defendant. Plaintiffs appeal.

We are not inclined to the opinion that plaintiffs intended to no-
vate their claim for a mortgage second in rank as to its payment.
True, the evidence on this point was contradictory, and plaintiffs were
not quick in finding out the rank of mortgage in the mortgage office
of St. Landry parish. They also neglected or overlooked to have it
stated in the second mortgage executed by defendant in their favor
that they would complete the transaction and give up the notes they

held, after the delivery to them of a certificate of mortgage disclosing the rank of the claims against the defendant.

For reasons not explained, they instructed the notary, who drew up the act of mortgage, after they had accepted the mortgage, to get a certificate of mortgage. They were surprised to learn from the certificate of mortgage, obtained by the notary in accordance with their direction, that a mortgage against Colomb primed their own, of which they swore they knew nothing.

We have examined the record closely; have weighed the evidence, and brought the work of examination on this point to a close, feeling confident that plaintiffs did not know at the time they accepted the mortgage that Brinkhaus had a mortgage which primed theirs.

This finds corroboration in some of the letters of plaintiffs to the defendant in which they state that they will hold on to the first note because of the Brinkhaus mortgage.

After the receipt of these letters, but prior to the present litigation, the defendant (Colomb) urged no complaint against plaintiffs (Gumbel & Co.) on the ground that they should have returned the first note.

On the contrary, after notice by plaintiffs that they would not surrender those notes, the defendant received the amount of one thousand dollars, secured by the second mortgage, and in one of his letters at least, he refers to the *mortgages* and notes which plaintiffs held as reason why they should aid him by letting him have money to cultivate and gather his crop.

The position of plaintiffs is also sustained by the fact that they are still in possession of these notes. This, we take it, indicated the intention of the parties. This court in similar cases has always given weight to the fact of possession of notes.

"Taking a note in renewal of one secured by mortgage is no novation when the first one is not given up." Exchange & Banking Co. vs. Walden, 15th La., 431.

"The first note not having been surrendered to the creditor there was no novation." Morgan *et al.* vs. Their Creditors, 1st La., 527; Coco vs. Lecour, 4th La., 512.

In a case recently decided this court said: "We do not think the notes were novated. Novation is not presumed. The notes were not surrendered;" citing a number of decisions. Zeigler vs. Creditors, 49th Ann., 163.

To the same effect was Holton & Winn vs. Hubbard & Co. *et als.*, 49th Ann., 733.

We have taken up and considered the points of the learned counsel for Colomb.

The first, in the order in which they are presented, that the consideration of the last mortgage was greater than the first mortgage, and that if a subsequent contract includes other consideration in addition to the consideration of the first, the former, the new, supercedes the latter, and that novation takes place.

Of the decisions cited by defendant only the case of Gardner vs. Levancor, 26th Ann., 679, throws some light, as we think, upon the subject. We quote from the *syllabus:*

"The original notes of Levancor & Co. to plaintiffs *were given up to the former with the exception, perhaps, of one of them not in the possession of the plaintiffs at the time. An exchange of notes took. place.* Plaintiffs received the new notes executed in their favor by defendants in pursuance of an agreement entered into between the parties. Novation was the result."

The above is an entirely different case from the one before us for decision, in that it was apparent that it was the intention of the parties to novate and substitute new notes, and the old notes were returned to the debtor, excepting one which the creditor did not hold and which therefore could not be affected by the transaction of the parties, and has therefore no bearing here.

True, there was other consideration than the old indebtedness, but that of itself does not give ground to sustain the plea of novation. We have found nothing directly in point in our jurisprudence. Consulting the French authorities we found the following bearing directly:

"NOVATION PAR CHANGEMENT D'OBJET."

"En d'autres termes, la novation n'existe qu'autant qu'elle résulte clairement des actes; il ne suffit pas aux parties, pour l'opérer, d'augmenter ou de diminuer la dette, de modifier le terme d'échéance ou les suretés primitivement données, ni meme de changer l'espéce de l'obligation; il faut que l'intention de faire novation soit exprimée par les parties ou que le second engagement soit necessairement incompatible avec le premier." Fuzier Herman, Vol. 3, page 132, §36.

The foregoing sustains the view that it does not follow that, because a debt is increased, the second act operates as a novation of the first.

We are inclined to give it weight for the reason that the articles of the French Code on the subject are similar to our own.

At this point of the case our attention was arrested by defendant's (Colomb) contention that plaintiffs (Gumbel & Co.) could not prove the condition claimed by them by parol; that they should have inserted the condition in the written act.

Upon examination we found the following in the note of evidence which, in our view, answers the objection.

Counsel for Brinkhaus moved the court to strike out testimony of plaintiffs (Gumbel & Co.) going to show any understanding had between them and Colomb in relation to the return of one thousand eight hundred dollars, upon the ground that everything said at the time was merged in the contract of mortgage, and that no parol evidence contradicting the recitals of the act could be received.

Counsel for S. Gumbel contended that their purpose in introducing the evidence was not to contradict the recitals of the act, but to rebut and contradict the testimony of the witness Colomb; that at the time and before the passage of the act it was understood between the firm of S. Gumbel & Co. and the witness that they would return him his one thousand eight hundred dollars notes, and show the condition upon which the return was to be made.

The facts being as set out here, the evidence was properly admitted.

This brings us to the question of imputation of payments. On that branch of the case defendant (Colomb) assails plaintiffs' (Gumbel & Co..) pleadings, and charges that in both their original and amended petition, plaintiffs claim that Colomb owes them the balance due them on the two notes of one thousand eight hundred dollars, *plus* the twenty-one hundred dollars; that as to the last, they reserve their right of action by allegation to that effect.

There was some inconsistency in the pleadings, which, however, we do not think had the effect of imputing payments as claimed by Brinkhaus.

Gumbel & Co. claimed the right to hold the two notes of one thousand eight hundred dollars each, to cover the advances made under the second mortgage and the amount of indebtedness of defendant, Colomb, on the day that he executed this second mortgage. In this, in our view, there is error. The first notes could not be held and their proceeds placed to the credit of the second mortgage. One, as the issues are appreciated by us, is independent of the other. Plaintiffs'

right to retain the notes, first in date, relafed back to the priór transactions, and not to those subsequent.

With reference to the amount due, the evidence discloses the following:

Question propounded to a member of the firm:

By the court: "I repeat the question."

Q. "At the time he executed the $2,100 mortgage, viz., February, 1894, that was all he was owing you?"

A. "That was all that he was owing us at the time. We applied the payments to that date."

The amount referred to by the witness was one thousand one hundred dollars.

It is therefore ordered, adjudged and decreed, that the judgment .appealed from be annulled, avoïded, reversed and set aside, as relates to $1,100.

It is further ordered, adjudged and decreed that S. Gumbel & Co. have judgment against M. P. Colomb for the sum of one thousand one hundred dollars, with 8% interest, from February 4th, 1894, and 5% attorney's fee on the amount, as stipulated in the act of mortgage.'

The rights of mortgage in S. Gumbel & Co. are hereby recognized, and declared to exist on the property mortgaged to the extent of the amount before mentioned, in this decree, and for interest and attorney's fees, as dating from February 4th, 1894.

To this extent only, the judgment appealed from is annulled.

With the foregoing exception, the judgment appealed from is affirmed. The costs of appeal are to be paid by appellees. The costs of the lower court in case of Brinkhaus vs. Pavy, Clerk, et al., are to be paid by defendants out of the proceeds of the property mortgaged; and the costs in the case of S. Gumbel & Co. vs. M. P. Colomb are to be paid by M. P. Colomb.

## ON APPLICATION FOR REHEARING.

MONROE, J. The application for rehearing on behalf of Brinkhaus and Colomb, is based upon two propositions, which have already been fully discussed, to-wit:

1. That the acceptance, by Gumbel & Co. of the note and mortgage, for $2100, in February, 1894, operated, *ipso facto,* as a novation of the debt represented by the notes and mortgage of March, 1892, and that no parol evidence to the contrary should have been admitted.

2.  That, from Gumbel & Co.'s petition, reserving their right to
sue upon the note of February, 1894, they must be considered as ad-
mitting that payments sufficient to extinguish them had been imputed
to the notes of March, 1892, leaving due thereon only an amount rep-
resented by the note of February, 1894, secured by mortgage inferior
in rank to that of Brinkhaus.

*First.*  The parol evidence admitted shows that there was no in-
tention to accept the note of February, 1894, secured by mortgage of
inferior rank, as a substitute, for the debt represented by the note of
February, 1894, was not entirely independent of that represented by
the notes of March, 1892.  As the matter stands, the effect of the
parol evidence, offered in behalf of Brinkhaus and Colomb them-
selves, is to establish the fact that $1100 of the debt represented by
the notes of March, 1892, is included in the $2100 for which the note
of February, 1894, was given, and thus to preclude Gumbel & Co. from
recovering that amount twice.  The admission of the evidence, for the
purpose and with the effect stated, necessarily involved an explana-
tion of the circumstances under which the note for $2100 was given,
and made it clear that Gumbel & Co. had no intention, in accepting
said note, to surrender a good security for a bad one.

*Second.*  In their answer to the suit filed by Brinkhaus, Gumbel
& Co. say that they have imputed the balances shown to be due on
Colomb's open account to the payment of the $2100 note, of February,
1894, and they claim as still due them, on the $1800 notes of March,
1892, a balance of $2003, and interest, etc.  In the suit filed by them,
against Colomb, they claim, as due them on the $1800 notes, after the
allowance of all credits to which they are entitled, a balance of
$1497.90, and interest, etc., for which they pray for judgment.  They
say, also, in this petition, that they hold the note of $2100 and they
reserve their right of action thereon.  The learned counsel who repre-
sents Brinkhaus and Colomb insists that we should give to this reser-
vation the effect of a judicial admission on the part of Gumbel & Co.,
that their whole remaining claim against Colomb is represented by
the $2100 note, secured by an inferior, and possibly worthless, mort-
gage, and should ignore the fact that the petition in which the reser-
vation is made was filed for no other immediate purpose than to as-
sert affirmatively, and enforce, a claim for $1497.90, on the $1800
notes, which were, and are, secured by first mortgage.   We have
found that the balance due on those notes is $1100, and that said

balance is also included in, and covered by, the $2100 note; the "reservation", therefore, applies to that note, after the deduction of said amount of $1100.

The pleadings of Gumbel & Co. are lacking in perspecuity and frankness, but they are not fairly susceptible of the construction which is sought to be placed on them.

Rehearing refused.