173 So. 752

## UNION BLDG. CORPORATION v. BURMEISTER.

No. 34166.

March 29, 1937.

See, also, 186 La. 503, 172 So. 767.

O'Niell & O'Niell, of New Orleans, for appellant.

Anna Judge Veters, of New Orleans, for appellee.

FOURNET, Justice.

The Union Building Corporation filed suit against Mrs. Catherine Burmeister for the full amount of the unpaid rent, $5,075, under an acceleration clause, on a contract of lease dated December 16, 1935, whereby it leased to the defendant the premises described as store No. 4, Union building at 222 Baronne street, New Orleans, La., for the purpose of operating a beauty parlor, and provisionally seized the property and effects found in the leased premises.

The defendant was served personally with citation and a copy of the petition but did not answer the suit. Judgment was rendered by default against the defendant for the amount prayed for, maintaining plaintiff's provisional seizure and recognizing the lessor's lien and privilege on the property and effects seized.

Upon execution of the judgment, it was shown by the mortgage certificate secured by the sheriff that there were three chattel mortgages of record in the mortgage office of the parish of Orleans, executed by the defendant in favor of the Crescent Beauty Supply Company and affecting movable property situated in the parish of Orleans, listed in detail. Nevertheless, the property was offered for sale but failed to bring two-thirds of the appraised value and therefore no sale was made. Later, the right of occupancy of the leased premises was sold at sheriff's sale to plaintiff for $667.

Subsequently, upon motion of plaintiff, the recorder of mortgages and the Crescent Beauty Supply Company (the recorded mortgagee) were ordered by the court to show cause on December 3, 1936, why the chattel mortgages should not be canceled and erased from the books of the recorder of mortgages, or, in the alternative, why the chattel mortgages should not be either canceled and erased in so far as plaintiff's lessor's lien and privilege on the property was concerned, or subordinated to its lessor's lien and privilege.

The Crescent Beauty Supply Company, in answer to the rule, averred that it was a nominal party in the chattel mortgage acts referred to and was not the present holder and owner of the notes identified therewith.

The Equipment Acceptance Corporation of New York filed an intervention and third opposition, alleging that it was the holder and owner of three promissory notes made and signed by Mrs. Catherine G. Burmeister, payable to the order of herself and by her indorsed in blank: (1) For the sum of $1,248, dated December 19, 1935; (2) for the sum of $1,080, dated December 19, 1935; and (3) for the sum of $2,163.68, dated March 1, 1935; each note being secured by chattel mortgage on the equipment provisionally seized, and the mortgage acts being recorded, respectively, in mortgage office of the parish of Orleans in Book 1511, folio 151, on the 20th day of December, 1935, and Book 1511, folio 152, on the same day, and in Book 1511,

folio 407, on March 4, 1936. Intervener prayed for judgment in its favor and against the defendant for the sum of $2,-328, plus interest and attorney's fees, with recognition of its vendor's lien and chattel mortgage on the property described in the acts of mortgage; that the property be sold separately and that it be paid out of the proceeds of the sale thereof by preference and priority over all other claimants.

The plaintiff filed exceptions of no cause or right of action to the intervention, and, on the same day, made the intervener a party to its rule to show cause filed against the recorder of mortgages and the recorded mortgagee, which the intervener answered.

By agreement of counsel for the plaintiff and counsel for the intervener, the intervention and the rule were consolidated for trial. After due trial, the court rendered judgment in favor of the Union Building Corporation, recognizing its lessor's lien and privilege upon the equipment and effects in the premises provisionally seized as prior and superior to the three chattel mortgages. The intervener and third opponent, Equipment Acceptance Corporation, has appealed.

The facts in the case are that the defendant, Mrs. Catherine Burmeister, desiring to operate a beauty parlor, *leased* for that express purpose, from the plaintiff appellee, Union Building Corporation, by written contract dated December 16, 1935, its store No. 4, known as Municipal No. 222 Baronne street, for a period of thirty-two months, beginning February 1, 1936, for a rental consideration of $2,100 a year, payable in equal monthly installments of $175 per month, payable in advance; and, on December 19, 1935, *purchased* a complete outfit of beauty parlor equipment, on terms of credit, from the Crescent Beauty Supply Company, an independent dealer, of New Orleans, in beauty shop supplies, handling such equipment for W. G. Shelton Company, of St. Louis, Mo. In representation of the unpaid purchase price of the equipment, comprised of 89 articles, the defendant executed two promissory notes, dated December 19, 1935; one for $1,248, and the other for $1,080, and in order to secure the payment thereof, she executed two separate chattel mortgages on the property purchased; one affecting 55 listed articles and the other the remaining 34 articles, respectively, which acts were duly recorded on the following day in the mortgage office of Orleans parish. The equipment was delivered to the defendant on the leased premises on January 10, 1936.

In accordance with its customary manner of handling such transactions, the chattel mortgage notes were transferred by the Crescent Beauty Supply Company to W. G. Shelton Company. The latter company desired to discount the paper with the Equipment Acceptance Corporation, the intervener and appellant here, but the notes did not meet with the technical requirements of the Federal Housing Administration, for whom intervener handled its loans; therefore, in order to comply with such requirements, the Shelton Company prepared a new note covering the combined amount of the notes and also another act of sale and chattel mortgage covering all

the equipment, which were promptly sent to the Crescent Beauty Supply Company, with instructions that the same be properly executed by it and the purchaser, Mrs. Burmeister. On the 1st day of March, 1936, the parties appeared and executed the new act and note before Leopold Stahl, the same notary public, who had prepared and executed the previous chattel mortgages, and on March 4, 1936, the act was recorded in the mortgage office of Orleans parish.

In due course, the chattel mortgage note dated March 1, 1936, was sold, transferred, and delivered to intervener, Equipment Acceptance Corporation, which note it insured with the Federal Housing Administration. But neither the notes dated December 19, 1935, nor the chattel mortgages identified therewith were canceled by the Shelton Company, who retained the notes in its possession but subsequently delivered them to intervener.

The lessee (defendant) defaulted in the payment of the fourth installment due May 1, 1936, and on the 5th of the month this suit was brought for the full amount of the unpaid rent ($5,075), which matured by virtue of an acceleration clause in the contract of lease and the beauty parlor equipment in the leased premises was provisionally seized.

The jurisprudence of this state is well settled that under the Chattel Mortgage Act, No. 198 of 1918, the pledge and lien resulting from the execution and recordation of a chattel mortgage takes precedence over and primes a lessor's lien arising subsequent thereto, but not one arising prior thereto. Youree et al. v. Limerick, 157 La. 39, 101 So. 864, 37 A.L.R. 394.

Plaintiff urges: (1) That the two notes of December 19, 1935, were novated by the substitution of the second chattel mortgage of March 1, 1936, and, consequently, are inferior to its lessor's lien; and (2) that the acts of sale and chattel mortgage, dated December 19, 1935, are null and void and without any effect as to third persons because the descriptions contained therein are not full descriptions so that the same might be identified, as required by section 2 of Act No. 198 of 1918, as amended by Act No. 189 of 1932.

The first question for our consideration, therefore, is whether the acts of chattel mortgage executed on December 19, 1935, were extinguished by the execution of the note and chattel mortgage dated March 1, 1936.

It is the jurisprudence of this state that the mere execution on the part of a debtor in favor of his creditor of a new obligation does not of itself have the effect of novating the original obligation. Novation is never presumed. The intention to novate must "clearly result from the terms of the agreement, or by a full discharge of the original debt," (article 2190, Rev.Civ.Code) and that "the taking of a new note in renewal of one secured by mortgage operates no novation, * * * where the first was not surrendered by the creditor," (Zeigler v. Creditors, 49 La. Ann. 144, 163, 21 So. 666, 674) unless the surrounding circumstances clearly indicate that the intention of the parties was to

novate the debt. Meyer, Weis & Co. v. William T. Atkins, 29 La.Ann. 586.

See, also, Lalande v. Breaux, 5 La. Ann. 505; Brinkhaus v. Pavy, 51 La.Ann. 1327, 26 So. 176; Exchange & Banking Co. v. Walden, 15 La. 431; Morgan et al. v. Their Creditors, 1 La. 527, 20 Am. Dec. 285; Coco v. Lacour, 4 La. 507, 512; Hughes v. Mattes, 104 La. 218, 28 So. 1006.

Plaintiff, in support of its contention, relies on the case of White Co. v. Hammond Stage Lines, 180 La. 962, 158 So. 353, 356, which it argued is analogous to the present case. In that case the court said:

"The question whether novation resulted when the new note was given by the stage lines to the White Company, on the 29th of October, 1931, depends upon whether the parties intended to extinguish the old debt and to substitute a new one in its place. Rev.Civ.Code, arts. 2185, 2187, 2190. Although novation does not take place as a necessary consequence of a creditor's taking a new note in substitution of one which he returns to the debtor, novation does take place in such a case if the circumstances surrounding the transaction show, or if the character of the transaction itself shows, that the parties intended to extinguish the existing debt and to substitute a new one in its place."

We do not think that the holding in the case relied upon by counsel is controlling in the case at bar. In that case, the mortgage creditor foreclosed on the last chattel mortgage note, disregarding the first one. The first note was never produced, as was done in this case. Moreover, the mortgage

debtor testified that the plaintiff had promised and agreed to return the first note when the second note was executed. Besides, the transaction between the creditor and debtor in that case, in executing the new act of chattel mortgage, represented a new deal, whereby additional security was included in the act.

■ In the instant case, there was no agreement between the creditor and the debtor evidencing any intention to novate, and furthermore, there is no evidence in the record to show that the creditor ever promised or intended to return the first notes upon the execution of the second note, but the record shows that if Mr. Defrost Smith, the credit manager of the W. G. Shelton Company had been present in court, he would have testified that "the Shelton Company did not intend to extinguish the two original notes dated December 19th, 1935, executed by Mrs. Burmeister and in fact did not extinguish them, but retained them and intended that they should remain in full force and effect." This testimony stands uncontradicted by the mortgage debtor.

We are therefore of the opinion that the execution of the note of March 1, 1936, did not have the effect of extinguishing the two notes dated December 19, 1935, and the vendor's lien and chattel mortgage securing the same.

■ This brings us to the consideration of plaintiff's second contention, i. e., that the chattel mortgages are null and void and without any effect as to third persons because the descriptions contained therein are not full descriptions so that the same might

be identified, as required by Act No. 198 of 1918, as amended by Act No. 189 of 1932, section 2 of the Act reads as follows:

*"That every such mortgage or property mentioned in Section 1 shall be in writing, setting out a full description of such property to be mortgaged, so that the same may be identified,* and also stating definitely the time when the obligation shall mature. *In order to affect third persons without notice,* said instrument must be passed by notarial act, or by private act duly acknowledged by one of the parties thereto or by a subscribing witness thereto before a notary public, and *the original or a certified copy thereof shall be recorded in the office of the Recorder of Mortgages in the parish where the property shall then be situated* provided further that the right to foreclose upon said mortgage by executory process shall not be permitted unless the mortgage be by authentic act." (Italics ours.)

The basis of plaintiff's contention is that the chattels are described in the chattel mortgage acts merely by listing each by its common name without any other means of identification thereto except the dealer's or manufacturer's stock numbers and, in support of this contention, cite the cases of Hodge v. Collens & Chapman, Inc. (La. App.) 154 So. 357; Consolidated Companies, Inc. v. Laws (McCray Refrigerator Sales Company, Intervener), 11 La.App. 676, 124 So. 775; Valley Securities Company, Inc., v. De Roussel, 16 La.App. 115, 133 So. 405; Roberts v. Atkins, 19 La.App. 634, 141 So. 427; Pittsburgh Plate Glass Company v. Lepow, 10 La.App. 38, 120 So. 795; New Way Family Laundry, Inc., v. Lebo, 16 La.App. 157, 133 So. 463; Le Corgne v. Garner, 7 La.App. 148; Durel v. Buchanan, 147 La. 804, 86 So. 189; Continental Bank & Trust Co. v. Succession of McCann, 151 La. 555, 92 So. 55.

On this subject-matter, it is stated in Jones on Chattel Mortgages and Conditional Sales (Bowers Edition):

"It is not necessary that the property should be so described as to be capable of being identified by the written recital or by the name used to designate it in the mortgage. * * *

"It is obviously impossible in most cases to set forth on the face of the mortgage all the articles embraced in it with such precision that any one, by a mere inspection of the mortgage, without reference to any other source of information, can identify them. * * *" Vol. I, § 53, pp. 94, 95.

"A description which will enable third persons, aided by inquiries which the instrument itself suggests, to identify the property, is sufficient." Vol. I, § 54, p. 96.

*"Parol evidence is admissible to identify the chattels mortgaged. Such evidence may aid but not make a description. The mortgage must of itself suggest inquiry which will result in identification. It is not possible to describe personal property so well as to preclude the necessity of such evidence to identify it. * * *"* Vol. I, § 64, p. 129. (Italics ours.)

A review of the cases on the subject-matter shows that the courts of this state, in considering cases involving chattel mortgages where there is no descriptive reference in the act itself to the chattels that would distinguish them one from the other of the same kind, have differentiated between those cases wherein reference is made in the act of chattel mortgage itself as to the location of the chattels at the date of its execution, and those wherein no reference as to location is made in the act. In the former, it has been held to be sufficient to affect third parties, whereas in the latter, it has been held not to be sufficient.

In the case at bar the chattels are described in the acts by common name and some have, in addition thereto, the dealer's or manufacturer's stock numbers. It is perfectly evident from the description that the property mortgaged is beauty parlor equipment. Jack London, who represented the Crescent Beauty Supply Company in the acts of chattel mortgage, testified that, by the use of the stock numbers, the equipment could be easily identified. It was recited in the acts of chattel mortgage that the articles were delivered by the Crescent Beauty Supply Company to Mrs. Catherine G. Burmeister, 222 Baronne street. Moreover, the premises, No. 222 Baronne street, were leased by the plaintiff to the defendant, Mrs. Burmeister, for the express purpose of operating a beauty parlor, and it is not shown, nor is it contended that she

operated any other beauty parlor or place of business in the city of New Orleans. We, therefore, conclude that, under such circumstances, the description was sufficient to give notice of the chattel mortgage to third parties and, particularly, the Union Building Corporation, the plaintiff in this case.

For the reasons assigned, the judgment of the district court is reversed and set aside in so far as it decreed that intervener's vendor's lien and chattel mortgage was inferior and subordinate to the lessor's lien and privilege on the property and effects seized, and it is now ordered, adjudged, and decreed that there be judgment in favor of intervener, Equipment Acceptance Corporation, for the sum of $2,328, with 8 per cent. per annum interest from February 10, 1936, together with 20 per cent. attorney's fees, with recognition of its vendor's lien and chattel mortgage on the property described in the acts of chattel mortgage, dated December 19, 1935, recorded in the mortgage office of Orleans parish in Book 1151, folio 151, and Book 1151, folio 152, respectively; that said property be sold separately, and that intervener's claim and judgment be paid out of the proceeds of the sale by preference and priority over all other creditors of the defendant, including the plaintiff; all costs of the intervention and third opposition to be paid by the plaintiff, Union Building Corporation.

O'NIELL, C. J., recused.