## PHILLIPS v. GILLASPIE.*

### No. 16729.

Court of Appeal of Louisiana. Orleans.

Nov. 2, 1937.

Arthur B. Leopold, Gerald Netter, James J. Landry, and Geo. Montgomery, all of New Orleans, for appellant.

James W. Hopkins, of New Orleans, for appellee.

McCALEB, Judge.

This is an appeal by Dr. William A. Gillaspie from a judgment rendered against him on his promissory note in favor of Mrs. Mabel Phillips, widow of Edward C. Church. Inasmuch as this is the second time the matter has come before us, we believe it to be apt to state briefly a history of the litigation.

On May 1, 1935, the plaintiff, as holder and owner of a promissory note in the sum of $1,500, executed by the defendant, filed suit against him for recovery.

The defendant answered admitting the execution of the note, but averred that he was not liable thereon by reason of certain equities existing between plaintiff's deceased husband and himself, which he set forth, in substance, as follows:

On February 20, 1928, and prior thereto, the late Edward C. Church, husband of the plaintiff, was an intimate friend and patient of the defendant (a practicing physician in the city of New Orleans). Church was a gambler and slot machine operator. He had been afflicted for some time with luetic heart disease, and was under the care of the defendant. On or about the aforesaid date, the defendant was summoned by Church to administer treatment to him and, upon the defendant being late due to a breakdown of his automobile, Church informed the defendant that he would place sufficient funds in the defendant's hands in order that the defendant might purchase a new automobile, and that, inasmuch as the defendant had been treating the Church family for a long time, the defendant could work out the amount of the purchase price of the new automobile in the rendition of professional services to Church and his family. Accordingly, Church deposited to the credit of the defendant the sum of $1,600 in the American Bank & Trust Company of New Orleans so that the defendant might purchase for himself a new automobile. As evidence of the indebtedness which was to be liquidated by professional services rendered and to be rendered to the Church family, the defendant executed and delivered to Church a promissory note in the sum of $1,600.

A few months thereafter, the defendant paid to the Dixie Homestead Association of New Orleans the sum of $100 for the account of Church, so that he, Church could become a member of the association and obtain a loan on his property, No. 1227 Lowerline street. A few days thereafter, defendant gave to Church a note for $1,500 and the first note for $1,600 was returned to him.

During the time prior and subsequent to February 20, 1928, and up to March 6, 1932, the defendant was the personal physician of the said Church, his wife, and his son.

It is further alleged that, at the time of the death of Church, he was indebted to the defendant in the sum of $1,078, for professional services rendered, and that,

at the time of the filing of the answer, the total indebtedness due by the said Church, his widow, and his son, amounted to $1,224. An itemized statement of professional services rendered is attached to the answer.

It is further averred that the making of the loan of $1,500 by the said Church to the defendant was for the protection of Church, his wife, and son, in that Church was a very sick man who was engaged in a hazardous business, and that he wanted to be assured of medical attention for himself and family in the event he should become an invalid, or in case he should become financially embarrassed.

The answer further sets forth that Church died on March 6, 1932, and that his succession was opened, and that, in the inventory taken of the assets of the estate, the note given by defendant was not listed, thereby indicating that the plaintiff, as widow in community, and her son, the legal heir, had no intention of holding the defendant responsible.

It is further alleged that on or about February 20, 1933, the note which had been given by the defendant to Church would have prescribed, and that, at the request of plaintiff, defendant gave to her the note herein sued upon as an accommodation and without any consideration; that defendant has at all times fulfilled his part of the verbal agreement had between Church and himself, and has rendered professional services to Church, his widow, and son, night and day, and stands ready. and willing to continue the rendition of professional medical services to plaintiff and her son until the amount due by them to the defendant equals $1,500, plus interest.

At the first trial in the district court, the defendant attempted to prove the allegations contained in his answer, but, upon objection made by counsel for plaintiff, the court excluded the testimony on the ground that parol evidence was inadmissible to vary the terms and conditions of the promissory note. Accordingly, judgment was entered for the plaintiff as prayed for, and from that judgment an appeal was taken to this court.

After trial here, we held (see 167 So. 242) that, under the defendant's pleading, the delivery of the note to plaintiff's husband was conditional and for a special purpose, and not for the purpose of transferring the property in the instrument, and that, as between the immediate parties, parol evidence, in proof of the alleged contemporaneous oral agreement, was admissible. Our opinion was based upon the decision of the Supreme Court in Goldsmith v. Parsons, 182 La. 122, 161 So. 175. Accordingly, we reversed the judgment of the district court and remanded the case for further proceedings.

Upon application of the plaintiff, writs to review our decision were granted by the Supreme Court, and that court decided (see 186 La. 45, 171 So. 567) that the facts set forth in the defendant's answer did not constitute a conditional delivery of the promissory note, and that the rule laid down in Goldsmith v. Parsons, supra, was inapplicable to the case. However, the court was of the opinion that the result reached by us was correct, as it construed the defense set up by the answer as tending to import a conditional obligation as distinguished from a conditional delivery. It found that parol evidence was admissible, under the allegations contained in the answer, to show that the debt, represented by the note, had been paid or partially paid by services rendered by the defendant to the plaintiff's husband. This view was based upon the principle of law, as stated in 71 A.L.R. 548 et seq., that the question involved was not "so much one of admissibility of evidence of a parol agreement for credit on the note, as of admissibility to show that there has actually been a payment, or a right to claim a payment in whole or in part."

We understand the ruling of the Supreme Court (in remanding the case for the hearing of evidence on defendant's answer) to be that the defendant was entitled to prove, if he could, by parol testimony, that there was, at the time he gave the promissory note to the plaintiff's husband, a contemporaneous verbal agreement between Church and himself to the effect that the note would be liquidated in principal and interest by the rendition of medical services to Church, and that the defendant did actually perform services in execution or partial execution of that agreement.

After the case was remanded by the Supreme Court, a new trial was had, and evidence tending to support the allegations of the answer admitted. After hearing this evidence, the district judge was of the opinion that the defendant had failed to prove the parol agreement set forth by him in his pleadings, and entered judgment

against him for the amount of the note, with interest and attorney fees. Hence this appeal.

His counsel argue that the district judge erred in his finding because the defendant proved by a preponderance of evidence, first, that there was a contemporaneous verbal agreement between plaintiff's husband and the defendant to the effect that the note was to be liquidated by the rendition of professional services by the defendant to Church; and second, that, in accordance with that agreement, the defendant had performed services in payment thereof, which amounted to the sum of $1,224, at the time suit was filed. In view of the contention, it is necessary for us to examine the evidence in order to determine the correctness of the judgment below.

At the outset, it is well to point out that, under article 2232 of the Civil Code, the burden of proving the contemporaneous verbal agreement, exhibiting payment or partial payment of the obligation on the note, was upon the defendant.

The question to be solved is solely one of fact and, as is usual in cases of this type, the testimony submitted by the adverse parties is in conflict. However, there are certain facts which are not in dispute which we shall set down before undertaking to discuss the other evidence in the case. It is conceded that the defendant, Dr. Gillaspie, and the plaintiff's late husband, E. C. Church, were intimate friends for many years; that Church was afflicted with serious ailments of the heart, kidneys, and bladder; and that Dr. Gillaspie was his attending physician. It is not disputed that some time during the early part of the year 1928, Dr. Gillaspie purchased a new automobile; that Church lent him the sum of $1,600 with which to make the purchase; and that Dr. Gillaspie executed his promissory note on February 20, 1928, for that amount, with interest thereon at the rate of 6 per cent. per annum, in payment of the debt. It is likewise uncontroverted that Church died on March 6, 1932; that his succession was opened; that the note of the defendant was not inventoried as part of the succession; and that, on February 20, 1933, Dr. Gillaspie executed the note in suit to the plaintiff for $1,500, with 6 per cent. interest thereon, and received in exchange therefor a previous note of his, which had been held by Church prior to the latter's death.

In support of the defense set forth by him in his answer, Dr. Gillaspie testified, as to the certain alleged facts surrounding the execution of the note to Church, in substance, as follows:

During the early part of the year 1928, he had an appointment to meet Church at the race track; that he was late for this appointment because his automobile had broken down; that when he arrived, Church inquired as to his tardiness, and was informed by the doctor of the facts concerning the automobile. Whereupon, Church told him to buy a new car, and that he (Church) would pay for it. Shortly thereafter, the doctor bought the new car, and Church lent him $1,600, which represented the greater portion of the purchase price.

The doctor states that Church said, at the time the $1,600 was placed at his disposal, "I will owe you more than that if you keep me well." To this remark, the doctor inquired as to whether Church expected to be paid back the money, and the latter responded in the negative. Notwithstanding the offer of this gift by Church, the doctor declares that he refused to accept it and, instead, he insisted that Church take his promissory note for the cash advanced. This note was executed by the defendant on February 20, 1928, and bore interest at the rate of 6 per cent. per annum. The doctor asserts that at the time the note was given it was agreed between Church and himself that the obligation would be liquidated by the medical treatments he was to render Church in the future, and that, although the note provided for interest, no interest on the obligation was to be demanded. When asked to explain why interest, at the rate of 6 per cent., was provided for in the original note, the doctor states that Church insisted upon its insertion because it was his (Church's) belief that the instrument would be invalid in the absence of such a stipulation.

The doctor further declares that, in pursuance of the agreement, he continued to treat Church, and did not render to the latter a statement of the services performed. In 1930, Church was in need of cash and desired to place a mortgage on his home. The doctor suggested that the money be borrowed from the Dixie Homestead Association. In order to obtain the loan, it was necessary for Church to be a stockholder in that homestead. Dr. Gil-

laspie, being a member of the board of the homestead, lent Church $100 so that he could purchase the share of stock. He states that, shortly after the loan was made to Church, a new promissory note was made by him for the principal amount of $1,500, and that it was handed over to Church in exchange for the original $1,600 note. He further says that this second note was dated February 20, 1928 (although given Church in 1930), and that it was the same as the original note in all respects, except that the face amount of the obligation was reduced from $1,600 to $1,500 as an acknowledgment that he had liquidated his indebtedness to Church to the extent of $100.

Church died in March, 1932. His succession was later opened, but the note was not inventoried as part of the estate. The doctor relates that, on the day of the funeral, he called on Mrs. Church and questioned her about the note, and that Mrs. Church told him that the note would not be included in the succession, as her husband had told her that the doctor was not to pay it. Notwithstanding this, the doctor executed, on February 20, 1933, the note in suit, and received in exchange therefor the note held by the plaintiff's husband. He explains that this new note was merely a renewal of the old note held by Church, and that, although he had rendered services to the Church family in an amount in excess of $1,000, he made no mention of this fact to Mrs. Church because she was aware of the understanding between Church and himself, to the effect that he was not to receive his note until he had performed professional services amounting to its face value.

The doctor's statement as to all conversations had between Church and himself is uncorroborated, except for that portion of his testimony respecting the original loan made by Church to him for the purchase of the automobile. On this point, he produced, as supporting witnesses, Joseph Sebro and Captain George Delhom of the New Orleans police force.

Sebro testified that he was present at the race track on the day the conversation took place with respect to Dr. Gillaspie's automobile; that Church said that he was going to buy the doctor a new car, and that Church later told him that, by giving the doctor a new car, he could not pay the doctor back for all the latter had done for him. He also states that the doctor told

him, "I am going to give him (Church) a note for $1600 and he is buying me a car."

Captain Delhom states that he was also present at the time the conversation respecting the automobile was had; that he heard Church say to the doctor that he (Church) would buy the doctor a new car, and that the doctor replied, "If you give me a new car I will work it out."

In summary of the evidence offered by the defendant and his witnesses, it will be observed that his version of the circumstances surrounding the giving of the promissory note is as follows: (1) Church wanted to make him a gift of a new automobile; (2) he refused to accept that gift, but insisted upon giving Church a note in payment of the amount of money furnished by the latter; (3) that it was understood and agreed that the principal of the note was to be liquidated by the rendition of medical services to Church; and (4) that, although the note provided for interest at the rate of 6 per cent., it was understood that no interest would be charged against him.

The doctor also contends that it was agreed that no suit should ever be brought against him on the note, and that he was entitled to liquidate the full face value thereof by the performance of medical services to the Church family.

In view of the testimony tendered, we are compelled to limit the extent of its admissibility because the Supreme Court has already decided in this case that the parol evidence is admissible only for the purpose of showing an executed contemporaneous oral agreement in payment or partial payment of the obligation sued upon. Hence, the evidence respecting the doctor's contention that he was entitled, under that agreement, to be relieved from interest, or that suit was not to be maintained on the note, cannot be considered in determining the case.

The evidence of Mrs. Church and her witnesses, regarding the agreement between the defendant and plaintiff's husband, can be partially reconciled with the statement of the defendant. Of course, Mrs. Church was not present when this alleged agreement was made. She testifies, however, that she knew of the existence of the promissory note for $1,600, and that, during the year 1930, while her husband was sick, he turned the same over to her

as a manual gift, stating that Dr. Gillaspie was good for the payment. She further says that her husband told her that, in consideration of the medical services rendered by Dr. Gillaspie, she should not charge him any interest on the obligation, and that if the note was renewed, she should give him credit for $100, which he (Church) owed the doctor for the share of stock in the Dixie Homestead. She further states that she did not at any time tell Dr. Gillaspie that he was not to pay the note, and that this note for $1,600 remained in her possession from 1930 until 1933, when she turned it over to the doctor in exchange for the note now sued upon. She positively denies the doctor's testimony that there were three notes. She declares that, on February 20, 1933, she made out the note in suit for $1,500 and took it to Dr. Gillaspie's office with the old note for $1,600; that her purpose in having the doctor sign a new note was because the old note was about to prescribe, and that Dr. Gillaspie executed the note in suit and received in exchange the original obligation for $1,600. She explains that the note for $1,600 was not inventoried in the mortuary proceedings of her husband because she considered it to be her property; it having been donated to her by her husband in the year 1930. She further explains that she reduced the obligation on the note in suit from $1,600 to $1,500 on instructions of her late husband, and that she waived all interest due on the old note for $1,600 because her husband told her that the interest on the note would be offset by the medical services the doctor had rendered to the family.

The testimony of Mrs. Church is supported by that of her son, John E. Church, and Sarah Stafford, a friend of the family.

The district judge was of the view that the defendant had not proved, to his satisfaction, the agreement set forth in the answer. It is evident that he was also of the opinion that the defendant had rendered services to the Church family, for he reserved to the defendant the right to sue for the value of these services in a separate proceeding.

■ An analysis of the testimony of Dr. Gillaspie and Mrs. Church discloses that there was obviously a verbal agreement between Church and the defendant, entered into at the time the original note was given, respecting the method by which it would be liquidated. Both parties testified

that medical services were to be performed by Dr. Gillaspie, and that their value would be applied against the note. The only difference between the statements is that the doctor says that the services were to be charged against the principal obligation, and that the interest stipulated for was to be waived; while Mrs. Church asserts that the services rendered were to be considered as offsetting the interest only.

That there was an arrangement between Dr. Gillaspie and Church for the liquidation of the obligation by the performance of medical services (aside from Mrs. Church's admission that the services rendered were to take care of the interest due on the note) is plainly evident from the circumstance that, when the succession of Church was opened, the note was not inventoried in those proceedings. It is true that Mrs. Church explains that her husband gave the note to her. Assuming that such was the case, it seems likely that it was Church's intention, in turning over this note to his wife, to place it beyond the reach of the general creditors of his succession. Moreover, we find the testimony of defendant corroborated by the circumstance that, from the time the note was given in 1928, up to the date of Church's death in 1932, there was no other payment made by him either on account of interest or principal, and that, during that period, although he performed medical services to the Church family, he did not render a bill.

We are therefore of the opinion that the defendant has proved that the obligation upon the original note was to be liquidated by the performance of medical services; that services were actually rendered to and accepted by the Church family in pursuance thereof; and that, under the ruling of the Supreme Court, he is entitled to have the fair value of these services considered as a payment on account of the principal and interest due upon the original note.

■ But counsel for plaintiff argues alternatively that, even though we should consider that there was a contemporaneous oral agreement respecting the method by which the original note was to be paid, the defendant's rights under that agreement were novated when he executed the note in suit and received in exchange therefor the original note. This point is not well taken because both Mrs. Church and Dr. Gillaspie testified that the note in suit is merely a renewal of the original obligation, and that it was given solely for the purpose of preventing the accrual of

prescription. It is well settled that novation is never presumed (see Civ.Code, art. 2190), and that the taking of a new note in renewal of an old one is insufficient to establish it. See Union Bldg. Corporation v. Burmeister, 186 La. 1027, 173 So. 752, and authorities therein cited.

■ Having determined that the defendant is entitled to claim the medical services actually rendered by him and accepted by the Church family, in payment of the interest and principal on the original note, we next consider the amount of the services he performed. According to his books, he has, from February 20, 1928, through March 16, 1935, rendered professional services to the Church family, valued by him at $1,224. The plaintiff challenges the correctness of his account and says that many of the items contained therein are erroneous, and that others are excessive. We have carefully examined these books and, while they are obviously not kept with the same exactness as those of a merchant, they sufficiently show the date of each visit made and the fee charged therefor. We find that the entries are substantially accurate, and that none of the charges are excessive.

The services rendered are therefore to be applied as payments on account of defendant's obligation. These payments, by article 2164 of the Civil Code, must be first imputed to the accrued interest upon the original note and the balance, if any, applied to the reduction of the principal. Ordinarily, the services rendered on account of the note would be due from the date of their performance. However, we find that it would be impracticable, in the instant case, to attempt to apply the numerous items, shown by defendant's books, in this manner, and we believe that it would be fair to both parties to consider that Church's obligation to pay for the services performed by the defendant matured at the end of the year in which the services were rendered. By adopting this process, we find that, from the date the note was given, February 20, 1928, to February 25, 1929, or approximately one year thereafter, the defendant rendered services valued at $255. The original note was $1,600, and the interest thereon at 6 per cent. for one year was $96. Deducting $255 from $1,696 leaves a balance on the principal obligation of $1,441 due as of February 25, 1929. From that date to February 13, 1930, services rendered amounted to $144. The interest due for that period was approximately $86 which, when added to $1,441, makes a total of $1,527. Deducting $144 therefrom leaves a balance due of $1,383 as of February 13, 1930. From February 28, 1930, to March 5, 1931, the defendant rendered services amounting to $219. To this should be added the sum of $100 representing a loan admittedly made by the defendant to Church. This amount, together with the amount of services rendered over the stated period, aggregates a total deduction of $319. The amount due on the principal of the obligation at that time was $1,383, and the accrued interest for one year was $83, making a total of $1,466. Deducting from this total the sum of $319 leaves a balance of $1,147 as of March 5, 1931. From March 9, 1931, to February 24, 1932, services were performed aggregating a total of $420. Interest on $1,147, balance due as of this date, amounted to approximately $69 which, when added to $1,147, aggregates $1,216. Deducting therefrom the sum of $420 leaves a balance due, as of February 24, 1932, of $796. From February 25, 1932, to February 22, 1933, services were rendered by the defendant amounting to $73. The interest for one year on $796 amounts to approximately $48, which, when added to $796, aggregates $844. Deducting the sum of $73 therefrom leaves a balance due, as of February 22, 1933, of $771. From this date to February 5, 1934, services were rendered amounting to $40. The accrued interest on the balance due of $771 was then approximately $46, which, when added to $771, aggregates a total of $817. Deducting $40 therefrom leaves a balance of $777 as of February 5, 1934. From that date to March 16, 1935, services were rendered amounting to $78. The accrued interest on the balance due amounted to approximately $47 which, when added to $777, aggregates a total of $824. Deducting therefrom the sum of $78 leaves a balance, as of March 16, 1935, of $746. This last amount was due and payable to the plaintiff at the time the suit was brought, and she is entitled to have judgment therefor.

For the reasons assigned, it is ordered that the judgment appealed from be amended so as to read as follows: It is ordered, adjudged, and decreed that there be judgment in favor of the plaintiff, Mrs Mabel Phillips, widow of Edward C. Church, and against the defendant, Dr. William A. Gillaspie, for the full sum of $746, with 6 per cent. interest thereon from March 16,

1935, until paid, and 10 per cent. attorney fees on the whole amount, principal and interest.

As thus amended, the judgment is affirmed; plaintiff to pay the cost of this appeal, and all other costs to be paid by the defendant.

Amended and affirmed.