On April 23, 1940, plaintiff sold to E.L. Tompkins a DeSoto automobile and as a part of the purchase price Tompkins executed his promissory note for the sum of $500, due three months after date, with interest and attorney's fees, which note was secured by a vendor's lien and chattel mortgage on the automobile. The sale and chattel mortgage was duly recorded in the chattel mortgage records of the Parish of East Baton Rouge. The chattel mortgage note was sold by plaintiff, before maturity, to the City National Bank of Baton Rouge.
On July 20, 1941, a few days prior to the maturity of the note, Tompkins paid the plaintiff the sum of $300 to be applied on the note and executed an ordinary promissory note for the sum of $200, payable three months after date. Plaintiff gave the $300 and the ordinary note to the City National Bank, the holder of the chattel mortgage note, which bank continued to hold the chattel mortgage note and the personal note of Tompkins. In the early part of October, prior to the maturity of his personal note, Tompkins paid to the bank the sum of $50 together with $4 accrued interest. This credit on the personal note appears of date of November 8, 1940. In the meantime, Tompkins had died on October 27, 1940, The application of the credit as of date of November 8, 1940, is explained by an officer of the bank who states that when Tompkins made this payment, Tompkins was given a renewal note, to cover the balance due, for him to sign, and return, but he died before returning the same and that therefore the credit was applied as of that date.
It further appears that a day or two prior to Tompkins paying the plaintiff the $300 and the execution of his personal note for the sum of $200, as stated above, Tompkins executed a chattel mortgage note on the same automobile in favor of the Stanocola Office Employees Federal Credit Union to secure a loan from it to the sum of $532.86.
After Tompkins died, his succession was opened and his widow qualified as administratrix of his succession. After thus qualifying, she applied for authority under the terms of Act 121 of 1934 to make a dation en paiement of the said automobile to the Stanocola Office Employees Federal Credit Union in satisfaction of the debt owed by Tompkins to the said Credit Union on the chattel mortgage resting on the said automobile, alleging that the said automobile did not have any value over and above the indebtedness. In these proceedings, no reference was made to the previously given chattel mortgage duly recorded in favor of plaintiff.
Thereafter, the Court, after due publication in accordance with Act 121 of 1934, authorized the administratrix to make the transfer of the automobile to the "Credit Union" in consideration of the cancellation of the note and mortgage due thereon, which was accordingly done. Shortly thereafter, the "Credit Union" sold the automobile to John J. Gonzales, the intervener in this case.
Shortly after the sale to Gonzales, plaintiff filed this suit against the Succession of Tompkins, seeking to recover balance due on the chattel mortgage note in the sum of $150, plus attorneys' fees and costs, and asking *West Page 568 
for recognition of its vendor's lien and privilege and chattel mortgage, and for a writ of sequestration on the automobile in the possession of Gonzales, which writ was granted.
Gonzales appeared and moved to dissolve the writ of sequestration on the ground that Tompkins had paid the chattel mortgage note on July 18, 1940, by the giving of $300 and his personal note of $200, thereby cancelling the original note of $500 and releasing the security given therefor. In the alternative, he averred that the chattel mortgage rights, if any, were cancelled and annulled by the proceedings had under Act 121 of 1934, supra. This motion was overruled. Thereupon, Gonzales intervened in the suit, setting up the same contentions as set forth in his motion to dissolve the writ of sequestration.
Plaintiff filed an answer to Gonzales' intervention, denying that the chattel mortgage note given by Tompkins had been paid and its vendor's lien and privilege and chattel mortgage rights lost, but averring that the $200 note was given to extend the balance due on the mortgage note as the bank would not carry a past due note on its books.
On the trial of the intervention of Gonzales, judgment was rendered in favor of plaintiff for the sum of $150, with interest at the rate of 8% per annum from October 16, 1940, with an additional 15% on principal and interest unpaid as attorney's fees, sustaining the writ of sequestration, with recognition of the vendor's lien and privilege and chattel mortgage on the automobile in favor of plaintiff to pay and satisfy said sum, and dismissing the intervention. From this judgment intervener has appealed.
In considering the two grounds set up by intervener Gonzales by which he claims that the chattel mortgage given by Tompkins to plaintiff in April, 1940, cannot affect his purchase of the automobile in question, we shall first discuss the effect of the dation en paiement, made in the succession proceedings.
Act 121 of 1934 provides the method for an administrator of a succession to transfer to a mortgage creditor the property belonging to the succession, burdened with a mortgage, in satisfaction thereof. It is obvious from the mere reading of the statute that such transfer can only be made in satisfaction of such mortgage debt or debts and cancellation of the same. It is also obvious that the administrator cannot, under this act, defeat a prior mortgage by transferring the property to a second mortgage holder and ignoring the holder of the first mortgage. In this case, the registry of the prior mortgage was notice to all parties. The very implication of the act is that the mortgage creditor or creditors must consent to the transfer of the property. In this case, neither the plaintiff nor the bank was considered by the administratrix as a mortgage creditor and of course their consent was not obtained. It therefore follows that the dation en paiement had no effect whatever on the prior chattel mortgage on the automobile in favor of the plaintiff, if that chattel mortgage was then alive and enforceable.
The next question is whether or not the chattel mortgage note given by Tompkins to plaintiff was paid and satisfied by the payment of $300 in cash and the giving of the $200 note by Tompkins to plaintiff on July 18, 1940.
The testimony of Francis McConnell, one of the members composing the partnership of McConnell Motors Company, plaintiff herein, and Mr. Butler, the bookkeeper, who accepted the cash and note from Tompkins, is to the effect that nothing was said or understood at that time about the cancelling of the chattel mortgage note which was then held by the bank; that the only reason for accepting the $200 note due 90 days after date was to satisfy the bank, which held the chattel mortgage note, in its rule not to carry past due notes on its books; that Tompkins did not disclose the source of the $300 nor did he inform them of having granted a second chattel mortgage on the car. Nothing was said about the return of the $500 note to Tompkins.
Mr. McConnell testified that he took the $300 in cash and the personal note of Tompkins to the bank. Upon being questioned as to the $500 he informed the bank that the same was not to be released. The evidence is to the effect that the bank retained the $500 chattel mortgage note and the $200 personal note of Tompkins pinned together, and Tompkins never at any time requested the return of the chattel mortgage note. Just prior to the maturity of the $200 note, Tompkins paid the bank $54, $50 of which was to be applied to the note and $4 to cover past due interest. Tompkins was given a *West Page 569 
renewal note of $150, due ninety days after date, to cover the balance on the $200, but failed to return it, he having died in the meantime. From these facts it does not appear that the parties ever intended to release the chattel mortgage note. Moreover, it does not appear reasonable that the parties intended such release, since it would not have been good business on the part of plaintiff to surrender such note by the mere acceptance of a personal note without security.
After the death of Tompkins, plaintiff as endorser of these notes paid the bank the balance due, and began these foreclosure proceedings. Evidently, the trial judge must have come to the conclusion that there was no payment and satisfaction of the chattel mortgage note, and we fully agree with him. The most favorable view on behalf of the intervener would be that there was a novation of the debt represented by the new note of $200, but novation is never presumed; the intention to substitute a new debt for an old one must be clearly shown by the agreement of the parties. The original debt must be extinguished in full before there can be a novation. The taking of a new note does not novate the prior debt. The evidence in this case fails to show that the $500 chattel mortgage note was extinguished, but on the contrary, it shows that the said note remained outstanding and enforceable, the $200 note being nothing more than evidence of the balance due thereon. See Civil Code, Articles 2187 and 2190; Union Building Corp. v. Burmeister, 186 La. 1027, 173 So. 752. Davis v. Welch,128 La. 785, 55 So. 372.
Counsel for intervener contends that the facts and circumstances show that Tompkins had understood that the chattel mortgage note had been satisfied by his paying the $300 in cash and the execution of his personal note for $200 and that the court erred in refusing to permit a Mr. Sterling to testify to such effect by what Mr. Tompkins had told him, and cites many decisions dealing with compensation cases. These decisions are not in point. In any event, even if such testimony would show that Mr. Tompkins understood that the chattel mortgage was being satisfied, it would not change the results of this case since it must be shown that plaintiff also understood and intended that the chattel mortgage note was discharged, which has not been shown.
Finding no error in the judgment of the lower court, it is affirmed.