396 So.2d 361 (1981)
PIKE BURDEN PRINTING, INC., In Liquidation
v.
PIKE BURDEN, INC. et al.
No. 14050.
Court of Appeal of Louisiana, First Circuit.
March 2, 1981.
*362 Donald S. Zuber, Rufus D. Hayes, Baton Rouge, counsel for plaintiff-appellee Pike Burden Printing, Inc., in liquidation.
Chester Hugh Boyd, Baton Rouge, counsel for defendants-appellants Eldren P. Nalley, William R. Bell and Pike Burden, Inc.
James D. Caldwell, Baton Rouge, counsel for third party defendant-appellant Ransome and Associates, Inc.
Before LOTTINGER, EDWARDS and PONDER, JJ.
LOTTINGER, Judge.
This is a suit for the unpaid balance on a promissory note. The corporate maker, Pike Burden, Inc., one of the defendants, was discharged in bankruptcy soon after this suit was filed. However, judgment was rendered in favor of B. B. Saxon, as liquidator of Pike Burden Printing, Inc., and against the two other defendants, Eldren P. Nalley and William R. Bell, who personally endorsed and guaranteed payment of the note. The trial court also rendered judgment on Nalley and Bell's third party demand against Ransome and Associates, Inc., the company which owned all the stock of Pike Burden, Inc. at the time of trial. From these adverse judgments, Nalley and Bell, and Ransome and Associates, perfected these appeals.
Nalley and Bell's main contention on appeal is that their obligations as endorsers/guarantors on Pike Burden, Inc.'s note were discharged by a novation under which Ransome and Associates agreed to pay their personal obligations. Ransome claims it never assumed Nalley and Bell's obligations on the note and contends further that a shareholder cannot be held liable for the debt of the corporation.

*363 THE FACTS
On August 1, 1973, an agreement of sale and chattel mortgage was executed between Pike Burden Printing, Inc. (PBPI), seller, and Pike Burden, Inc. (PBI), buyer, wherein the assets and business of PBPI, a Baton Rouge printing establishment, were sold to PBI. Although their names were similar, the two corporations were separate and distinct legal entities, each having the authority to issue stock. PBPI was represented by its sole shareholder, Bernard B. Saxon, Sr. (Saxon). PBI was represented by Nalley and Bell, who were president and secretary, respectively, of PBI. The sale price of the assets and business was $255,000.00. Of this sum, the seller received $71,400.00 in cash; a non-interest bearing note executed by PBI in the sum of $21,600.00 payable on or before July 31, 1974, but not before January 1, 1974; and an interest-bearing promissory note in the amount of $162,000.00 payable in monthly installments beginning January 1, 1974.
In connection with the sale, on August 7, 1973, Nalley and Bell executed a Guaranty Agreement. Under the terms of the Guaranty Agreement, Nalley and Bell personally guaranteed payment of the first one-half of the purchase price of the PBPI assets, a sum of $127,500.00. They also agreed that the second half of the price would be secured by a pledge of all the stock of PBI. The stock was to be pledged when the first half of the purchase price had been paid.
On August 1, 1974, PBI, represented by Nalley, executed a new promissory note in favor of PBPI in the sum of $29,191.68. Nalley and Bell signed the back of the note in blank under the words: "Personally Endorsed and Guaranteed By." This is the note at issue in this suit. The new note was given in payment of the $21,600.00 non-interest bearing note executed in connection with the sale and for other obligations PBI owed Saxon. In return for the new note, Saxon marked the $21,600.00 note "paid" and gave it to Nalley and Bell. The $21,600.00 figure was credited towards the purchase price of PBPI's assets.
The testimony was conflicting as to why the new note was issued. Nalley and Bell claim that Saxon did not want the $21,600.00 note paid in cash because of the tax problems the additional income would cause him that year. Saxon contended that PBI had financial problems and could not pay the $21,600.00 note, and that the second note represented a new loan to PBI, Nalley and Bell, separate and apart from the original sale and transaction.
Nalley and Bell made payments timely on the $29,191.68 note until around April, 1976, when they sold their shares of stock in PBI to First Republic Life Insurance Company (First Republic). When Nalley and Bell sold their stock to First Republic, both were under the impression that all the obligations of PBI, as well as their personal obligations, were assumed by First Republic, and that they were discharged from any further liability to Saxon and PBPI.
On August 31, 1976, stock held by other employees of PBI was acquired by Ransome and Associates, Inc. (Ransome) and transferred the same date to First Republic, which at that point owned all the stock of PBI. On December 31, 1976, all outstanding shares of PBI stock were sold to Ransome by First Republic.
During this period of stock transfers, the note had fallen in arrears. Threatened with possible legal action, PBI represented by its chairman of the board, Al J. Ransome, entered into an agreement with PBPI, represented by Saxon, on January 3, 1977. Under this agreement, unless all of the stock of PBI was pledged to PBPI in accordance with Nalley and Bell's Guaranty Agreement of August 7, 1973, suit would be brought on the note against PBI. The agreement also stated that the PBI stock was to be pledged "as additional security and in lieu of the personal guarantee of E. P. Nalley and William R. Bell. ..."
On January 11, 1977, a collateral pledge of stock was executed by Al J. Ransome, who was also chairman of the board of Ransome and Associates, Inc. At the time the collateral pledge of stock was executed, the balance due on the purchase of PBPI *364 business and assets had fallen below the one-half guaranteed by Nalley and Bell.
The January 11, 1977, collateral pledge of stock makes specific mention of the $29,191.68 note as one of the notes issued in connection with the purchase and assets of PBPI by PBI. The pledge agreement states that Ransome "takes cognizance" of the sale of PBPI to PBI "and it further takes cognizance of two notes executed in connection therewith, one being in the original amount of One Hundred Sixty-Two Thousand and no/100 ($162,000.00) Dollars and one being in the original amount of Twenty-Nine Thousand One Hundred Ninety-One and 68/100 ($29,191.68) Dollars." Additionally, the pledge document states that Ransome and Associates "further specifically did assume the obligation of E. P. Nalley and William R. Bell in connection with a commitment to pledge stock dated Baton Rouge, Louisiana, August 7, 1973...." The stock pledge was made "in order to furnish additional collateral and in order to relieve E. P. Nalley and William R. Bell of their obligations as guarantors" under the August 7, 1973 Guaranty Agreement.
When PBI failed to pay the May 1, 1977 installment on the note, Saxon, as liquidator of PBPI, instituted this suit against PBI, Nalley and Bell, in solido, for the balance of $14,918.18, interest and attorney's fees. In the same month, PBI entered a voluntary petition for bankruptcy. The note sued upon herein was entered as an unsecured claim by PBPI in the amount of $19,020.68, for principal, interest and attorney's fees. Under the amended plan of arrangement, PBPI received a disbursement of $3,804.13, which was credited to principal and interest. PBI was discharged.
On May 17, 1978, all the assets of PBI were sold to RPW Printing, a domestic partnership. Ransome and Associates remained the sole shareholder of PBI. On September 17, 1979, a dation en paiement was executed between PBPI and PBI and RPW Printing, whereby the assets of the printing business were returned to PBPI. In return, the $162,000.00 note, which was part of the original purchase price, was marked paid and returned to PBI. The stock which was pledged by Ransome and Associates was also returned.
In connection with the collateral pledge of stock executed by Ransome and Associates, Nalley and Bell signed another Guaranty Agreement which stated in essence that the stock being pledged by Ransome and Associates represented all of the outstanding shares of capital stock of PBI. Al J. Ransome was required to execute a similar personal guarantee. Nalley and Bell testified that the attorney for Saxon, Rufus Hayes, told them that the execution of the personal guarantee in connection with the pledge of stock was tantamount to a release of their personal guarantee under the note. Buttressing their testimony in this regard was the testimony of Al J. Ransome, who stated on the stand that the clear understanding between the parties when the stock was pledged was that Nalley and Bell would be let out of their personal obligations under the note. "When we walked out of Mr. Hayes' office, we had delivered the stock and fulfilled the obligations and Bell and Nalley had no further connection with Pike Burden or B. B. Saxon. That was a clear understanding given to all parties," Ransome testified. Ransome stated further, however, that he was not assuming the obligations of anyone. He said he pledged the stock to fulfill the commitment that arose out of the original sale of the PBPI business and assets to PBI.

THE TRIAL COURT'S DECISION
In written reasons for judgment, the trial court found that the collateral pledge of stock executed by Ransome and Associates, Inc. on January 11, 1977, was not a novation. The pledge agreement "related as per its terms and language strictly to the August 1973 sale. It is true that the sum of $29,191.68 mentioned therein is the amount of [the new note guaranteed and endorsed by Nalley and Bell]. However, the note which it replaced had been marked paid and returned to defendants many years earlier, and the mention of this amount does not *365 destroy the obvious character of this instrument, which was to furnish additional collateral to plaintiff in connection with the unpaid balance due it. This pledge was required by the 1973 sale agreement. Defendants received ample consideration for [the new note] in the form of forebearance. They personally endorsed and guaranteed this note. Nothing contained in the ... collateral pledge destroyed this guarantee. It is argued that this collateral pledge document was prepared by plaintiff's attorney. That fact is not denied. But that does not create or destroy obligations that were not addressed in the document. Therein plaintiff released no one. Defendants were not parties. The document only was to help facilitate the pledge of stock which was required by [the original sales agreement]."
The trial court cast Nalley and Bell for the principal balance of $12,456.45, together with interest, attorney's fees and costs. On Nalley and Bell's third party demand, the trial court held that Ransome and Associates, Inc. assumed Nalley and Bell's obligations when it purchased the assets and debts of PBI. One of the liabilities was the note sued upon in this case, and the trial court therefore held Ransome liable to the defendants on the third party demand.

SPECIFICATIONS OF ERRORS
Nalley and Bell claim on appeal that the trial court erred in failing to find that a novation of their personal obligations on the note occurred in the course of the various transactions related to the collateral pledge of stock by Ransome. Ransome claims the trial court erred in finding that Ransome assumed the liabilities of PBI when it purchased the PBI stock and in finding that a sole shareholder was liable for a corporate debt.

NALLEY, BELL AND NOVATION
The pertinent provisions of the Louisiana Civil Code dealing with novation under the facts of this case are Articles 2185, 2189(2), 2190, 2191 and 2192. These Articles provide:
"Art. 2185. Novation is a contract, consisting of two stipulations: one to extinguish an existing obligation, the other to substitute a new one in its place.
"Art. 2189. Novation takes place in three ways:
* * * * * *
"2. When a new debtor is substituted to the old one, who is discharged by the creditor.
"Art. 2190. Novation can be made only by persons capable of contracting; it is not presumed; the intention to make it must clearly result from the terms of the agreement, or by a full discharge of the original debt.
"Art. 2191. Novation by the substitution of a new debtor may take place without the concurrence of the former debtor.
"Art. 2192. The delegation, by which a debtor gives to the creditor another debtor who obliges himself towards such creditor, does not operate a novation, unless the creditor has expressly declared that he intends to discharge his debtor who has made the delegation."
Although the code articles state that novation is not presumed to occur and that a creditor must expressly declare his intent to discharge his debtor, our courts have held that a debtor may be discharged where the intent of the creditor to novate is clearly indicated. Isaacs v. Van Hoose, 171 La. 676, 131 So. 845 (1930); Strunk Chain Saws, Inc. v. C. W. Williams, 111 So.2d 195 (La. App. 2nd Cir. 1959). Novation may also occur where the intent of the parties, the character of the transaction, the facts and circumstances surrounding the transaction and the terms of the agreement itself reveal a desire to effect a novation. Placid Oil Company v. Taylor, 325 So.2d 313 (La. App. 3rd Cir. 1975), writ refused 329 So.2d 455 (La.1976); Crescent Cigarette Vending Corporation v. Toca, 271 So.2d 53 (La.App. 4th Cir. 1972); Smith, Howard and McCoy, Inc. v. Acme General Contractors, Inc., 152 So.2d 596 (La.App. 2nd Cir. 1963), cert. denied, 244 La. 663, 153 So.2d 881 (1963); but see Louisiana Materials Company v. Turcich, 256 So.2d 719 (La.App. 4th Cir. 1972); *366 Harepour v. A. C. Collins Ford of New Orleans, Inc., 363 So.2d 1261 (La.App. 4th Cir. 1978).
Even if a creditor does not expressly declare in a written act that his original debtor is to be released, a novation may nonetheless be found if all the circumstances surrounding the transaction show that a novation was clearly intended by the creditor. The burden of proving novation, however, falls on the party who seeks its protection. This is so because a novation results in the discharge of a debtor, and the court will not presume that a creditor in the course of his business affairs released a debtor. Art. 2190. Creditors are not in the business of releasing debtors who have not paid. A debtor must present convincing proof to show that his creditor has voluntarily released him from his obligation.
While the testimony at trial shows that Nalley and Bell may have believed they had been discharged from their personal obligations under the notes sued upon herein, we must hold that the two endorsers failed to bring forth convincing proof that Saxon intended to novate their debts. The various written documents filed in evidence contained no express declaration of novation. In the documents evidencing the collateral pledge of stock by Ransome and Associates, there is nothing to show that Nalley and Bell were to be relieved of their personal obligations on the note. Even though the collateral pledge mentions the $29,191.68 note, the provisions of the pledge are clear to the effect that the pledge was made under the terms of the original sales agreement and was made to relieve Nalley and Bell of their obligations thereunder. If anything, the collateral pledge represented an attempt by Saxon to obtain additional security for the sums due PBPI under the 1973 sale of business and assets.
Nalley and Bell testified that they thought that their personal obligations were extinguished when they executed affidavits stating that all outstanding shares of PBI had been pledged by Ransome and Associates. Had all the parties intended for Nalley and Bell's personal endorsements/guarantees under the note to be extinguished, language to show this intention could have easily been inserted in the documents. But it was not. The testimony concerning the other circumstances surrounding the transaction was ambiguous as to whether a novation was intended. Nalley and Bell rely heavily on the testimony of Al Ransome to support their position. Read objectively in its entirety, Ransome's testimony confirms what the parties put in writing in the collateral pledge agreements. The stock pledge was made a part of the original sales transaction to relieve Nalley and Bell of their personal guarantees for one-half of the purchase price of PBPI. Saxon never relieved them of their personal obligations on the note. We therefore affirm the trial court's judgment against Nalley and Bell.

RANSOME AND ASSOCIATES
The trial court judgment casting Ransome and Associates on the third party demand was apparently based upon the belief that the corporate entity called Ransome and Associates was responsible for the obligations of the corporate entity called Pike Burden, Inc. or that Ransome and Associates had assumed the personal obligations of Nalley and Bell. While Ransome and Associates was admittedly the sole shareholder of Pike Burden, Inc., evidence in the record fails to show that Ransome and Associates was liable for either the debts of Pike Burden, Inc. or the debts of Nalley and Bell individually. Although Al J. Ransome testified that it was his understanding that Ransome and Associates had purchased all the stock, assets and obligations of PBI, the fact remains that the only thing Ransome and Associates actually purchased was the outstanding stock of PBI. Ransome and Associates' only connection with PBI, albeit a strong connection, was its position as sole shareholder.
Unless fraud or disregard of the corporate entity gives rise to the piercing of the corporate veil, a shareholder or shareholders of a corporation are generally not *367 liable for the corporate debts. La.R.S. 12:93(B). When PBI was discharged in bankruptcy its obligation to PBPI was likewise discharged. We know of no law which would hold the sole shareholder liable for the outstanding debt of a corporation which is discharged in bankruptcy, unless fraud is involved, unless the corporate entity has been disregarded or unless the shareholder has personally guaranteed payment of the corporate debt. None of these has been shown to exist in this case.
Ransome and Associates is certainly not liable on the note itself, La.R.S. 10:3-401, and there has been no showing that Ransome and Associates in any way became liable to Nalley and Bell by virtue of any agreements outside of the note. We therefore reverse the trial court's judgment casting Ransome and Associates on the third party demand.
Therefore, for the above and foregoing reasons, the judgment of the trial court holding Ransome and Associates on the third party demand is reversed, and in all other respects the judgment of the trial court is affirmed. All costs, both in the trial court and in this court, are taxed to defendantsEldren P. Nalley and William R. Bell.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.