United States Court of Appeals,

Fifth Circuit.

No. 92-3658.

George WAINER, Plaintiff-Appellant,

v.

A.J. EQUITIES, LTD., Defendant-Appellee.

March 4, 1993.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before DUHÉ and BARKSDALE, Circuit Judges and TRIMBLE,[*] District Jud.

PER CURIAM:

The controlling issue in this case is whether consent given by a lessor to the release of his lessee when lessor consented to the assumption and assignment of the lease in the lessee's bankruptcy constitutes a novation under Louisiana law and is, therefore, a defense to the guarantor of the lease against efforts by the lessor to collect from the guarantor. On the particular facts of this case, we are convinced that the district court fully addressed the issues and the well-pleaded facts of the complaint and find ourselves in agreement with the district court's analysis and its granting of the dismissal of the complaint under Fed.R.Civ.P. 12(b)(6). We therefore affirm on the basis of the district court opinion which is attached hereto.

AFFIRMED.

ATTACHMENT

MINUTE ENTRY

JULY 6, 1992

SCHWARTZ, Jr.

GEORGE WAINER

VERSUS

A.J. EQUITIES, LTD.

---

[*]District Judge of the Western District of Louisiana, sitting by designation.

CIVIL ACTION

NO. 92-0580

SECTION "A"

Filed July 7, 1992.

This matter is before the Court on the motion of defendant A.J. Equities, Ltd. ("AJ Equities") to dismiss the complaint of plaintiff George Wainer ("Wainer"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The motion, set for hearing on June 24, 1992, was taken under submission without oral argument.

## I.

On September 14, 1973, Wainer entered into a lease (the "Lease") with Barkers 417 Corp. ("Barkers 417") for 68,000 square feet of retail space in a shopping center he owned on Manhattan Boulevard in Harvey, Louisiana.[1] The Lease was for a term of 25 years, from November 11, 1974 to November 30, 1999.[2] For each year of the Lease, Barkers 417 agreed to pay Wainer an annual minimum rental of $176,800, computed on the basis of $2.60 per square foot of ground floor area, in equal monthly installments. Barkers 417 further agreed to pay additional rental equivalent to 2% of the gross sales of the business conducted on the leased premises in excess of $8,840,000 and to pay its *pro rata* share of common area maintenance expenses and real property taxes.[3]

Barkers 417 was formed for the purpose of operating a discount department store in the premises that it was leasing from Wainer. Thus, Wainer required a guarantee (the "Guarantee") of Barkers 417's obligations under the Lease be executed by its parent, the predecessor of AJ Equities (i.e., Slater, Walker of America, Limited).[4] According to Wainer, the relevant parts of the Guarantee

---

[1] Complaint, ¶ V and Ex. A (copy of the Lease attached to the Complaint). For the purposes of this motion, the Court shall accept the plaintiff's allegations as true and construe them in the light most favorable to him. *Palermo v. Rorex,* 806 F.2d 1266, 1270 (5th Cir.), *cert. den.,* 484 U.S. 819, 108 S.Ct. 77, 98 L.Ed.2d 40 (1987).

[2] *Id.*

[3] Complaint, ¶¶ VII-IX and Ex. A, §§ 2.7, 5.1, 6.1 and 7.1.

[4] The name of Slater, Walker, Limited was changed first to Cornwall Equities, Ltd. and later to A.J. Equities, Ltd. *See* AJ Equities' Memorandum in Support of Motion to Dismiss, at p. 2 n. 1.

are sections 2 and 3 which provide in pertinent part:

> 2. The Guarantor ... does hereby guarantee the due, strict and punctual performance by [Barkers 417] under [the Lease] and by any assignee thereof, of the terms, conditions and covenants of [the Lease] on [Barkers 417's] part to be performed.
>
> 3. The Guarantor will pay to [Wainer], as Landlord named in [the Lease], as said term is defined in [the Lease], directly upon demand, all such sums or amounts as may be owing to [Wainer], when due, by [Barkers 417] or by any assignee thereof, at any time or times under any of the terms of [the Lease].[5]

On January 28, 1975, the Lease was amended to add to the leased premises a 4,000 square foot annex at a rental rate of $2.40 per square foot, or $9,600, per year.[6] Two further lease modifications were made in 1976, both involving the shopping center plot plan.[7] *On all three occasions Wainer sought and obtained the guarantor's written approval to the changes.*[8]

After the 1976 lease modifications, AJ Equities sold Barkers 417 to KDT Industries, Ltd. ("KDT"). On August 5, 1982, KDT filed a petition on behalf of itself and its subsidiaries, including Barkers 417, for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York.[9] In the course of the bankruptcy proceeding, KDT (including its subsidiary Barkers 417) moved for an order authorizing it to assume the Lease and assign it to Gaylords National Corporation ("Gaylords") for $500,000, pursuant to section 365 of the Bankruptcy Code.[10] Wainer initially filed an objection to the proposed assumption and assignment of the Lease, but after entering a "Modification of Lease" with Gaylords on March 5, 1983, he withdrew his objection and "consented and agreed to" the March 11, 1983 Bankruptcy Court's order

---

[5]Complaint, Ex. B at §§ 2 and 3.

[6]Complaint, ¶ X and Exhibit C.

[7]Complaint, ¶¶ XI-XII and Exs. D-E.

[8]Complaint, ¶¶ X-XII and Exs. C-E (Approval was given by Cornwall Equities, Ltd., predecessor by name change to AJ). *See supra* footnote 4.

[9]Complaint, ¶ XIII.

[10]Complaint, ¶ XIV and Ex. F. All parties to the bankruptcy proceeding, including AJ Equities, were given notice of KDT's application. Complaint, ¶ XIV. Section 365 of the Bankruptcy Code address the rights of a debtor to reject or assume executory contracts and leases. 11 U.S.C. § 365.

authorizing Barkers 417 to assume the Lease and assign it to Gaylords.[11]

In the "Modification of Lease," Wainer agreed to withdraw his objections to the assignment in exchange for modifications to the Lease, which were to become effective with the assignment of the Lease to Gaylords.[12] The agreement allowed Wainer to recover 7,615 square feet of the leased premises and reduced Gaylords's annual minimum rent by $18,999 to $167,401 per year.[13] The percentage rent was also modified to require payment of 1% of gross sales between $6,000,000 and $8,400,000, in addition to the pre-existing charge of 2% of gross sales in excess of $8,400,000, and the agreement eliminated Gaylords's right to credit payments of real property taxes against percentage rent.[14] The agreement also allowed Wainer to expand the shopping center into an adjacent parking area, slightly reducing the parking available next to Gaylords by approximately 20 spaces.[15] AJ Equities was not a party to this instrument.

In addition to authorizing the assumption and assignment of the Lease, the Bankruptcy Court order of March 11, 1983 released KDT and Barkers 417 from the lease obligations and from any breaches of the Lease occurring after the assignment.[16] AJ Equities was not a signatory to the Bankruptcy Court's order and neither it nor the Guarantee are mentioned in the order.[17]

Pursuant to the Bankruptcy Court order, Barkers 417 assigned the Lease to Gaylords on March 22, 1983.[18] In the "Assignment of Lease," Gaylords agreed that the assignment would be

[11]Complaint, XIV-XV and Exs. F and G.

[12]Complaint, ¶ XV and Ex. G.

[13]*Id.* Wainer's contention that this reduction was on a *pro rata* basis is incorrect, see Wainer's Memorandum in Opposition to Motion to Dismiss, at p. 5, because he fails to take into consideration the 4,000 square feet being rented at $2.40 per square foot. However, the Modification of Lease does result in all parts of the premises being leased at $2.60 per square foot.

[14]*Id.*

[15]*Id.*

[16]Complaint, ¶ XIV and Ex. F.

[17]Complaint, Ex. F.

[18]Complaint, ¶ XIV and Ex. F.

without recourse to Barkers 417 or to its guarantor for their obligations under the Lease, and Gaylords discharged Barkers 417 and its guarantor from all claims arising after the date of the effective date of assignment.[19]

Two and a half years later, on October 7, 1985, Wainer and Gaylords entered into a "Second Modification of Lease" which increased the amount of space covered by the Lease to 68,000 square feet, the same as under the Lease when originally confected, increased the minimum rent to $3.24 per square foot, or $220,000, per year and reduced the percentage rent to 1% of gross sales in excess of $10,000,000.[20] AJ Equities was not a party to this agreement.

On April 25, 1990, Gaylords filed a petition for relief pursuant to Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York.[21] Unlike KDT, during the course of the proceeding, Gaylords rejected the remaining term of the Lease.

Alleging a loss of rentals under the Lease as a result of the Gaylords's default and unable to pursue either Barkers 417 or its assignee, Gaylords, due to the operation of bankruptcy law, Wainer now seeks to recover the losses from AJ Equities, pursuant to the Guarantee. AJ Equities has filed the instant motion to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, alleging four separate grounds for dismissal.[22]

## II.

AJ Equities contends that the 1983 assumption and assignment of the Lease, pursuant to section 365 of the Bankruptcy Code, which released the original tenant and substituted a new tenant, resulted in a novation of the Lease under Louisiana law and, thus, released the guarantor. Also, Wainer, as lessor, expressly consented to the terms of the Bankruptcy Court's order, which authorized the assignment and the release of Barkers 417 from its obligations under the Lease. In sum, Wainer

---

[19]Complaint, Ex. F.

[20]Complaint, ¶ XVI and Ex. H.

[21]Complaint, ¶ XVII.

[22]Because of the decision reached by the Court on the first ground for dismissal, it shall not address the last three grounds.

agreed to the novation of the Lease and by his own act released both Barkers 417 and its guarantor.

The Bankruptcy Court order authorized KDT (which included its subsidiary Barker 417) to assume the Lease and assign it to Gaylords pursuant to section 365 of the Bankruptcy Code. An assumption and assignment of a lease under section 365 substitutes a new debtor (the assignee, in this case Gaylords) for the old one (Barkers 417), who pursuant to section 365(k) is "relieve[d] ... from any liability for any breach of such contract or lease occurring after such assignment." 11 U.S.C. § 365(k). *See In re Sapolin Paints, Inc.,* 20 B.R. 497, 500 (Bankr.E.D.N.Y.1982); *In re Lafayette Radio Electronics Corp.,* 9 B.R. 993, 1000 (Bankr.E.D.N.Y.1981). Once a lease has been assumed, the rights of the parties are governed by state law unless there are contrary provisions in the Bankruptcy Code. *In re Cook United, Inc.,* 53 B.R. 342, 345 (Bankr.N.D.Ohio 1985); *In re Dulan,* 52 B.R. 739, 741 (Bankr.C.D.Cal.1985) (citing cases).

Novation under Louisiana law involves the substitution of a new obligation for an existing one, which is thereby extinguished. La.Civ.Code Ann. art. 2185 (1870).[23] It takes place "[w]hen a new debtor is substituted to the old one, who is discharged by the creditor." La.Civ.Code art. 2189(2) (1870). *See, e.g., Davidson Sash & Door Co. v. Contract Carpet & Supply, Inc.,* 263 So.2d 123, 125 (La.App. 1st Cir.1972). An assignment from one debtor to another "does not operate a novation, unless the creditor has expressly declared that he intends to discharge his debtor who has made the obligation." La.Civ.Code Ann. art. 2192 (1870). *See, e.g., Bayou Acceptance Corp. v. Superior Hydraulics, Inc.,* 446 So.2d 558, 560-61 (La.App. 3rd Cir.1984). A novation with regard to the principal debtor will release any sureties. La.Civ.Code Ann. art. 2198 (1870). Although novation is not presumed, La.Civ.Code Ann. art. 2190 (1870), Louisiana courts have held that "a debtor may be discharged where the intent of the creditor to novate is clearly indicated." *Pike Burden Printing, Inc. v. Pike Burden, Inc.,* 396 So.2d 361, 365 (La.App. 1st Cir.1981). "Novation may also occur where the intent of the parties, the character of the transaction, the facts and circumstances

---

[23]The events pertinent to novation occurred prior to the amendment of the Louisiana Civil Code articles governing Obligations, which became effective January 1, 1985. *See* 1984 La.Acts, No. 331 § 1. Accordingly, the pre-revision novation articles govern herein. *See* 1984 La.Acts, No. 331, § 12.

surrounding the transaction and the terms of the agreement itself reveal a desire to effect a novation." *Id.* However, the debtor must present convincing proof that the creditor has released him voluntarily from his original obligation. *Id.* at 366.

Wainer does not dispute that the assignment of the Lease from Barkers 417 to Gaylords satisfies the requirement of substitution of a new debtor for the old debtor.[24] However, he alleges that he did not consent to release Barkers 417 from its obligations under the Lease.

Contrary to Wainer's argument, *In re Sandy Ridge Development Corp.,* 881 F.2d 1346 (5th Cir.1989), and *United States v. Stribling Flying Service, Inc.,* 734 F.2d 221 (5th Cir.1984), do not support his claim that whenever there is an assumption and assignment of a lease by a Bankruptcy Court, the original lessee must be released as a matter of law and, thus, there is nothing voluntary about such a *release* and it cannot give rise to a novation. In both cases, the Fifth Circuit held that a creditor's approval of a Chapter 11 reorganization plan in which a debtor is *discharged* may not constitute consent by the creditor to release a guarantor under applicable state law. *In re Sandy Ridge Development Corp.,* 881 F.2d at 1351; *United States v. Stribling Flying Service, Inc.,* 734 F.2d at 223; *see also* 11 U.S.C. § 524(e) ("**discharge** of a debt of the debtor does not affect the liability of any other entity on, or the property of and other entity for, such debt"). However, the instant case does not involve a *discharge.*

Section 365 of the Bankruptcy Code provides special rules for unexpired leases, pursuant to which a debtor-tenant has two options. He can reject the lease, which is then terminated, giving rise to a breach of the lease and a claim for damages by the landlord which may ultimately be discharged. If there is a guarantor, the landlord may pursue him under applicable state law even if the debtor's obligation to the landlord is discharged.[25] Alternatively, the Bankruptcy Court may order an assumption and/or assignment of the lease if (1) the obligations of the tenant are brought current *and* (2) the landlord is given "adequate assurance of future performance by the assignee." 11 U.S.C. §§

---

[24]Wainer's Memorandum in Opposition to Motion to Dismiss, at p. 11.

[25]Section 524(e) preserves the right of a creditor to proceed against a guarantor in spite of the discharge of the debtor if state law permits.

365(b)(1)(A) and 365(f)(2)(B). Once these requirements are satisfied the lease may be assigned and the debtor is relieved of future obligations under the lease. 11 U.S.C. § 365(k). *In re U.L. Radio Corp.,* 19 B.R. 537, 543 (Bankr.S.D.N.Y.1982). In this situation, there is no debt and nothing is "discharged." "Discharge" is a term of art under the Bankruptcy Code, *In re Norton,* 76 B.R. 624, 628 (Bankr.M.D.Tenn.1987), *rev'd on other grounds,* 867 F.2d 313 (6th Cir.1989), and is not the same as a release from future obligations. When a lease is assumed and assigned to a third party pursuant to section 365, section 365(k) relieves the trustee and the estate from future liability after an assignment; it does not discharge a debt.

KDT filed bankruptcy under Chapter 11 of the Bankruptcy Code. Section 101(11) defines "debt" as "liability on a claim." 11 U.S.C. § 101(11). Section 1141(d)(1) provides for the effects of a plan adopted under Chapter 11 and for the discharge of debts that have arisen before the filing of the petition and of certain post-petition debts, including those specified in section 502(g) of the Bankruptcy Code. Section 502(g) provides in pertinent part:

> A **claim arising from the rejection,** under section 365 of this title ... of an executory contract or **unexpired lease** of the debtor **that has not been assumed** shall be determined, and shall be allowed under subsection (a), (b) or (c) of this section or disallowed under subsection (d) or (e) of this section.... (Emphasis added.)

Section 365(g) also explains that the *rejection* of an unexpired lease constitutes a breach of the lease, giving rise to a claim. 11 U.S.C. § 365(g). Therefore, under the Bankruptcy Code, a lease that *has been assumed* under a plan or pursuant to section 365 does not give rise to a claim. *See In re Marple Publishing Co.,* 20 B.R. 933, 935 (Bankr.E.D.Pa.1982) (a lease obligation that is assumed is not discharged by confirmation in a Chapter 11 case); *Federal's Inc. v. Edmonton Investment Co.,* 555 F.2d 577, 581 (6th Cir.1977) (a party to an executory contract has no claim while the contract is executory; the claim arises only after rejection). Absent a claim, there can be no liability on a claim and, thus, no debt. Absent a debt, there is nothing to be discharged pursuant to section 1141.

In its bankruptcy proceeding, KDT (including its subsidiary Barkers 417) did not reject the Lease and, thus, no claim arose in its bankruptcy proceeding to bring about a debt which may have been discharged. Rather, authorization to assume and assign the Lease was sought from the Bankruptcy Court.

Wainer initially objected to the assumption and assignment of the Lease, asserting his right of "adequate assurance of future performance," pursuant to sections 365(b)(3) and 365(f)(2)(B) of the Bankruptcy Code.[26]  However, after objecting, negotiating and executing the "Modification of Lease" with Gaylords, Wainer withdrew his objection to the assumption and assignment of the Lease. The preamble to the "Modification of Lease" provides:

> WHEREAS, Landlord [Wainer] originally objected to the assignment of said Lease to Tenant [Gaylords];  and
>
> WHEREAS, in compromise of said objections, the Landlord [Wainer] and Tenant [Gaylords] wish to enter into this agreement and Landlord has agreed to withdraw its objections to the Assignment of said Lease to Tenant....[27]

As aforesaid, the modifications made to the Lease were extensive, including reducing the size of the

---

[26]Prior to its amendment in 1984, the Bankruptcy Code provided:

> [A]dequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance of:
>
> (A) of the **source of the rent** and other consideration due under such lease;
>
> (B) that any percentage rent due under such lease will not decline substantially;
>
> (C) that assumption or assignment of such lease will not breach substantially any provision, ..., in any other lease, financing agreement, or master agreement relating to such shopping center;  and
>
> (D) that assumption or assignment of such lease will not disrupt substantially any tenant mix or balance in such shopping center.

11 U.S.C. § 365(b)(3) (prior to amendment in 1984) (emphasis added).

> The right of a shopping center lessor to demand adequate assurance with respect to the "source of rent" was clarified in the revisions to the Bankruptcy Code in 1984 which added to subsection (A):
>
> [I]n the case of an assignment, that the financial condition and operating performance of **the proposed assignee and its guarantors, if any,** shall be similar to the financial condition and operating performance of **the debtor and its guarantors, if any,** as of the time the debtor became the lessee under the lease.

11 U.S.C. § 365(b)(3)(A).

[27]Complaint, Ex. G.

premises being leased and increasing the amount of rent to be paid.[28]  Subsequently, Wainer, as landlord, through counsel, signed and consented to the Bankruptcy Court order approving the assumption and assignment of the Lease.[29]  It was not a situation in which a creditor merely participated in a bankruptcy proceeding and agreed or objected to a Chapter 11 plan's confirmation or where a debtor is discharged.  Rather, Wainer voluntarily withdrew his objection and *consented* to the assumption and assignment of the Lease *because he received material benefits in the "Modification of Lease."*  By Wainer's own actions he waived his right to require as a condition of assignment that AJ Equities or some other party guarantee the obligation of Gaylords and novated the Lease.[30]

Accordingly, and considering the foregoing,

IT IS ORDERED that defendant AJ Equities motion to dismiss is GRANTED and plaintiff's complaint is HEREBY DISMISSED.

The Clerk of Court is directed to enter a judgment in accordance herewith.

(((((

---

[28]*See supra* footnotes 12-15 and accompanying text.

[29]*See supra* footnote 11 and accompanying text.

[30]*Cf. Republic Supply Co. v. Shoaf,* 815 F.2d 1046 (5th Cir.1987) (Creditor brought suit against guarantor on a guaranty executed for the benefit of a corporation.  In prior bankruptcy action, the bankruptcy court had confirmed a Chapter 11 reorganization plan of the corporation that released guarantor from the guaranty.  Although Creditor's representative was also the President of the Unsecured Creditors' Committee, he neither objected to the release provision in the plan nor appealed its confirmation.  The Fifth Circuit held that even assuming section 524 did not give the bankruptcy court subject matter jurisdiction to release the guaranty at issue, the doctrine of *res judicata* barred creditor's suit to enforce the guaranty.).