STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-632


ROGER R. ARNOLD, ET AL.

VERSUS

DONALD S. HANCOCK


**********

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CATAHOULA, NO. 23,175 "A"
HONORABLE KATHY A. JOHNSON, DISTRICT JUDGE

**********

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and Elizabeth A. Pickett, Judges.


AMENDED AND, AS AMENDED, AFFIRMED.


**Marshall Leon Sanson**
**505 Pine Street**
**Monroe, LA 71201**
**Telephone: (318) 388-1234**
**COUNSEL FOR:**
 **Defendant/Appellant - Donald S. Hancock**

**Henry James Lossin, Sr.**
**P. O. Box 398**
**Jonesville, LA 71343**
**Telephone: (318) 339-7238**
**COUNSEL FOR:**
 **Plaintiffs/Appellees - Roger R. Arnold, Anita Neal Arnold and**
 **Roger B. Arnold**

**Richard F. Zimmerman, Jr.**
**Jennifer Aaron Hataway**
**Kantrow, Spaht, Weaver, et al.**
**P. O. Box 2997**
**Baton Rouge, LA 70821-2997**
**Telephone: (225) 383-4703**
**COUNSEL FOR:**
> **Plaintiffs/Appellees - Roger R. Arnold, Anita Neal Arnold, and Roger B. Arnold**

**THIBODEAUX, Chief Judge.**

This case involves a suit to enforce a 1993 owner-financed mortgage loan on immovable property against the defendant, Donald S. Hancock, by the plaintiffs/mortgage-holders, Roger R. Arnold and his parents, Anita Neal Arnold, and Roger B. Arnold ("the Arnolds"). In 1998, following numerous defaults by Mr. Hancock on the original 1993 mortgage note, the parties executed a second note. The 1998 note added a monthly late charge fee for any delinquent payments and increased the loan rate by one percent.

In 2004, following numerous defaults by Mr. Hancock on the 1998 note, the Arnolds filed suit, seeking to enforce the mortgage loan and to have their lien on the property recognized. Mr. Hancock defended the suit on the grounds that the second note, executed in 1998, operated as a novation that extinguished the 1993 note, and he further argued that the 1998 note was unsecured. Following the bench trial in 2005, the district judge determined that the 1998 note did not extinguish the secured 1993 note, and she entered a judgment in favor of the Arnolds, recognizing their special mortgage, lien, and privilege on the immovable property. She further granted the Arnolds a judgment against Mr. Hancock in the total amount of $213,418.77, which covered Mr. Hancock's indebtedness on the loan and the Arnolds' attorney fees. Mr. Hancock appeals.

For the reasons set forth below, we affirm the portion of the trial court's judgment finding that the 1998 note did not by novation extinguish the 1993 note and the portion recognizing the Arnolds' mortgage, lien, and privilege on the immovable property. However, we amend the portion of the judgment awarding a total of $213,418.77 and increase the total award to $215,548.56.

## I.

## ISSUES

We must decide:

(1)     whether the trial court erred in finding that novation of the secured note had not occurred and in recognizing the mortgage, lien, and privilege against the immovable property; and

(2)     whether the trial court erred in calculating the indebtedness on the note, including the amount awarded for attorney fees.

## II.

## FACTS AND PROCEDURAL HISTORY

On August 4, 1993, the Arnolds sold a restaurant and motel located in Jonesville, Louisiana, to Mr. Hancock for the purchase price of $150,000.00. Mr. Hancock paid $10,000.00 down and executed a promissory note for $140,000.00 in favor of the Arnolds. The August 4, 1993 promissory note was paraphed "Ne Varietur" by the notary public, identifying the note with a mortgage on the property as evidenced and described in the Act of Credit Sale of the same date, thereby creating a lien and privilege on the subject property. The 1993 promissory note and the Act of Credit Sale provided the terms of the sale and indebtedness, including the purchase price of $150,000.00, the down-payment of $10,000.00, and the finance terms for the balance of $140,000.00.

The 1993 note and Act of Credit Sale further provided for a $140,000.00 mortgage loan with an interest rate of eight and one half percent (8.5%) per annum from date, and with payments due in increments of $5,000.00 on November 1, 1993 and $5,000.00 on February 1, 1994, followed by 120 consecutive and equal payments of $1,128.79 due on the 15th of each month beginning March 15, 1994, and ending

with a final balloon payment of $104,720.42 on March 15, 2004. The Act of Credit Sale also provided that Mr. Hancock would maintain insurance coverage on the property in the amount of at least $130,000.00 and would pay all taxes on the property when they became due. In case of default, the 1993 note provided for attorney fees of twenty-five percent (25%) "on the amount to be collected."

Mr. Hancock defaulted on the loan in 1995 when he failed to maintain insurance coverage, and further defaulted by missing three payments in 1996, one payment in 1997, and one payment in 1998. During this time, Mr. Hancock enjoyed possession of, and ostensibly derived income from, the mortgaged commercial property. Dr. Roger B. Arnold, testifying on behalf of himself and his parents, stated that Mr. Hancock paid only $10,243.25 on the original note from 1993 to 1998, that the Arnolds made several foreclosure attempts, and at one time they prepared a *dation en paiement*. The record does not explain why these attempts failed. Notwithstanding, because of the numerous delinquencies and deviations from the payment schedule, the due dates became unclear, and in 1998 the Arnolds asked Mr. Hancock to execute another promissory note for the balance due, primarily to clarify the amount of the unpaid balance and to reschedule the remaining payments.

The April 20, 1998 note was for $129,756.75. It was paraphed "Ne Varietur" by the notary for identification with the mortgage of "August 4, 1993" which date was typed above the handwritten date of "April 20, 1998" and the notary's signature. The new 1998 note did not change the signatories, the payees, the security or object of the loan, and it did not contain any notation or other evidence that it was paying off or replacing the 1993 note. Likewise, the 1993 note was not stamped paid or released to Mr. Hancock. The 1998 note rescheduled the payments and increased the interest rate on the loan by one percent, from eight-and-one-half

3

percent (8.5%) to nine-and-one-half percent (9.5%); it provided for 96 consecutive installments of $1,187.15, due on the 15th of each month, with a final balloon payment of $108,219.56 due on April 15, 2006. As an incentive to pay timely, the new note also provided for a $100.00 late charge fee on payments that were over two weeks late. Mr. Hancock testified that he received around three thousand dollars from the Arnolds for repairs and new air conditioners at the time of the execution of the new note. However, this testimony was uncorroborated, and Mr. Hancock provided absolutely no paperwork, receipts, or cancelled checks as evidence.

Following the execution of the new note for $129,756.75 in 1998, Mr. Hancock began making monthly payments of $1,187.15. His first payment, properly calculated, applied $1,027.24 to interest and applied $159.91 to principal. After making the first five payments on time, Mr. Hancock became delinquent. According to the Arnolds' payment schedule appearing in the record as an exhibit, Mr. Hancock made a total of forty-one (41) payments, most of which were paid late. Even though he made a payment in October 2003, his last payment only brought the loan current to September 15, 2001. As of that date, thirty-six (36) late charges had accrued, and Mr. Hancock never increased his payments to cover the late fees. This resulted in the Arnolds' adding the $100.00 late charge fees to the balance of the loan each month. Because the monthly late charges were almost as much as the principal portion of Mr. Hancock's monthly payment, as of the last payment posted on September 15, 2001, the balance on the note had decreased by only a few thousand dollars.

The Arnolds filed suit to enforce the mortgage against Mr. Hancock on June 15, 2004, and they amended their petition for the last time in September 2004. At that time, the Arnolds were seeking principal, interest, and late charges totaling $170,392.56, plus attorney fees of $42,598.14, representing twenty-five percent

(25%) of the amount requested on the note. Mr. Hancock filed hand-written answers to the petitions. Mr. Hancock filed for bankruptcy under Chapter 7 of the United States Bankruptcy Code, and the matter was automatically stayed. In May of 2005, Mr. Hancock filed a motion to dismiss and/or convert the bankruptcy proceeding, and his attorney filed an answer to the Arnolds' suit, asserting that the 1993 note was not enforceable as it had been novated, that the [1998] note had not been paraphed and identified with a mortgage, and that attorney fees were at the discretion of the court.

The bench trial was ultimately conducted on November 14, 2005; testimony was provided by Dr. Arnold and Mr. Hancock; and dates were set for post-trial briefs on the issue of novation. The trial judge subsequently found in favor of the Arnolds, issuing her Reasons for Judgment in January and her judgment in February of 2006. Finding Dr. Arnold's testimony more credible than Mr. Hancock's testimony, the trial judge determined that there had been no agreement to extinguish the first note via the execution of the second note, and she entered judgment recognizing the Arnolds' mortgage, lien, and privilege on the immovable property.

The trial judge further awarded the Arnolds a judgment against Mr. Hancock in the total amount of $213,418.77. This amount included $126,326.46 in principal on the note; $61,184.66 in total interest on the note; $3,500.00 in late fees; $2,407.65 for insurance coverage, and $20,000.00 in attorney fees, for one hundred hours of work at $200.00 per hour. Mr. Hancock appealed. Following his appeal, the matter was again stayed by the bankruptcy court for several months, due to Mr. Hancock's proceedings there. The stay was lifted and briefs were ultimately

5

received. We amend the judgment to correct the principal, interest, and late fees for a total award of $215,548.56. We affirm in all other respects.

## III.

## LAW AND DISCUSSION

### Standard of Review

An appellate court may not set aside a trial court's findings of fact in absence of manifest error or unless it is clearly wrong. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993); *Rosell v. ESCO*, 549 So.2d 840 (La.1989). A two tiered test must be applied in order to reverse the findings of the trial court:

> a. the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
>
> b. the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).

*Mart v. Hill*, 505 So.2d 1120 (La.1987).

Even where the appellate court believes its inferences are more reasonable than the fact finders, reasonable determinations and inferences of fact should not be disturbed on appeal. *Arceneaux v. Domingue*, 365 So.2d 1330 (La.1978). Additionally, a reviewing court must keep in mind that if a trial court's findings are reasonable based upon the entire record and evidence, an appellate court may not reverse said findings even if it is convinced that had it been sitting as trier of fact it would have weighed that evidence differently. *Housely v. Cerise*, 579 So.2d 973 (La.1991). The basis for this principle of review is grounded not only upon the better capacity of the trial court to evaluate live witnesses, but also upon the proper allocation of trial and appellate functions between the respective courts.

## Novation and Extinguishment

Mr. Hancock contends that the trial court erred in finding that the execution of the 1998 note did not operate as a novation to extinguish the 1993 secured note. He argues in the alternative that, if the 1993 note was not novated, the secured indebtedness should be calculated on the 1993 note, and the unsecured indebtedness should be figured on the 1998 note. We disagree. The trial court correctly articulated the applicable law on novation in her Reasons for Judgment, which included the text for Louisiana Civil Code Articles 1879, 1880, and 1881. Those articles provide as follows:

**La.Civ.Code art. 1879. Extinguishment of existing obligation**

Novation is the extinguishment of an existing obligation by the substitution of a new one.

**La.Civ.Code art. 1880. Novation not presumed**

The intention to extinguish the original obligation must be clear and unequivocal. Novation may not be presumed.

**La.Civ.Code art. 1881.** Objective novation

Novation takes place when, by agreement of the parties, a new performance is substituted for that previously owed, or a new cause is substituted for that of the original obligation. If any substantial part of the original performance is still owed, there is no novation.

Novation takes place also when the parties expressly declare their intention to novate an obligation.

Mere modification of an obligation, made without intention to extinguish it, does not effect a novation. The execution of a new writing, the issuance or renewal of a negotiable instrument, or the giving of new securities for the performance of an existing obligation are examples of such a modification.

At trial, Dr. Arnold testified that due to the number of defaults and missed payments on the 1993 note, it was difficult to determine what payments were due. He stated that the second note, dated April 20, 1998, was executed for the purpose of reorganizing the payments and reiterating the obligations due. Dr. Arnold further testified that when the 1998 note was executed, a substantial part, over ninety-two percent (92%), of the performance on the original 1993 note was still owed. He specifically testified that the debt on the first note was not paid off, that the second note was just a rescheduling of the same obligation, that neither the object nor the parties had changed, that the original debt was never extinguished, and that he never released the defendant from the original obligation. The trial judge was very active in questioning the parties and obtaining clarification regarding the parties' intent. She specifically asked Dr. Arnold whether it was ever his intent to release the mortgage on the property, to which he responded, "No." She also asked him what triggered the execution of the new note, and he responded that they wanted to add an incentive to pay the notes on time and keep the insurance current.

When Mr. Hancock testified, the trial judge asked him numerous questions regarding the status of his payments, and he denied knowing when or how much he was behind, claiming that his mother ran the office. Mr. Hancock did not provide the court with any paperwork, receipts, or proof of payment, indicating that the court would have to rely on the Arnolds' documentation. He admitted to signing the promissory notes but claimed that he did not know the interest rate on either and denied ever reading the documents, even at the time of trial. Mr. Hancock admitted to filing bankruptcy but denied knowing the date he filed or the amounts on the debts that he turned in to the bankruptcy court. He stated that he filed for bankruptcy because his business went down after 9-11, testifying that he owned a shrimp boat

and motel. He further testified that he ceased ownership of the shrimp boat after Hurricane Katrina struck. He admitted however that he filed for bankruptcy before the hurricane struck. Mr. Hancock subsequently contradicted his earlier testimony by saying that he never owned the shrimp boat, but was only the self-employed captain of the boat.

The trial judge specifically asked Mr. Hancock about the reasons for the second note and the status of the mortgage. Mr. Hancock acknowledged that the second note involved rescheduling the payments. However, he testified that he did not know "one way or the other" whether the mortgage was released when he signed the second note in 1998, and stated that he "did not even think about it." He testified that when he filed for bankruptcy, he did not know what he was thinking about the mortgage, then stated that he "figured" it was "released off of the last one [note]." When asked why he thought the Arnolds would give him a new note without collateral when he was already behind and still owed so much on the original note, he merely responded that it was a "friendly gesture." It was clear from the trial judge's questions at trial that she did not find Mr. Hancock's answers plausible or credible, and at one point she reminded him that there is a penalty for providing incorrect information to the bankruptcy court. In her Reasons for Judgment, the trial judge stated that Dr. Arnold's testimony was more credible, and found that there was no intent to extinguish the original note and mortgage.

In her Reasons for Judgment, the trial judge cited *Pike Burden Printing, Inc. v. Pike Burden, Inc.*, 396 So.2d 361 (La.App. 1 Cir. 1981), stating that the burden of proving novation falls on the party seeking its protection, and that the court will not presume that a creditor in the course of business affairs releases a debtor. In the *Pike* case, where the court found that two endorsers had failed to bring

forth convincing proof that the creditor intended to novate their debts, the court stated that, "[c]reditors are not in the business of releasing debtors who have not paid. A debtor must present convincing proof to show that his creditor has voluntarily released him from his obligation." *Id.* at 366.

The trial judge also cited *Polk Chevrolet, Inc. v. Vicaro,* 162 So.2d 761 (La.App. 1 Cir. 1964), which also found that a second note executed by one obligor served to rearrange the installments but did not novate the pre-existing mortgage note. There the court stated that, "[t]o constitute a novation there must simultaneously occur both the cancellation of a present or outstanding obligation and the substitution in its place of a new obligation with the consent of the parties concerned." *Id.* at 764-65. In the present case, there was clearly no cancellation of the original 1993 note and its outstanding obligation, or the mortgage securing it, and there was no consent by the Arnolds to substitute a new obligation.

Finally, the trial court cited the case of *Studebaker Bros. Mfg. Co. v. Endom*, 51 La.Ann. 1263, 26 So. 90 (La.1899), which held that the defendant's indebtedness for carriages and vehicles sold to him prior to the death of his wife was not novated after her death by the taking of new notes. The court articulated that the obligor's intention alone does not suffice, and further stated that, "[t]he intention, too, of the other party must appear. To constitute the contract of novation, in the essential point of the extinguishment of the pre-existing obligation, there must be shown the consent of *both* contracting parties." *Id.* at 91 (emphasis added).

Even the factually dissimilar and non-analogous cases cited by Mr. Hancock to support his argument for novation, provide that, "[t]he most important factor in determining whether a novation has been effected is the intent of the parties." *Scott v. Bank of Coushatta*, 512 So.2d 356, 360 (La.1987). While Mr.

Hancock cites *Scott* in support of his argument that a novation occurred herein, the facts and circumstances in *Scott* are entirely different from the facts and circumstances in the present case and serve only to emphasize the missing elements for a finding of novation in the present case. In *Scott*, the first note was novated by the second note where the signatories, the financed object, and the security on the notes were different, and where there was a will to extinguish, i.e., an intent to novate, the first note, evidenced by notations on both notes; the first note was marked "paid" by the Bank and released, and a handwritten notation on the second note indicated that it had paid off the first note.

It is well-settled that a debtor's mere execution of a new obligation in the creditor's favor does not novate the original obligation; and the taking of a new note in renewal of one secured by a mortgage does not operate as a novation, where the first note was not surrendered by the creditor, unless surrounding circumstances clearly indicate that the parties intended a novation. *Union Bldg. Corp. v. Burmeister*, 186 La. 1027, 173 So. 752 (La.1937); *Phillips v. Gillaspie*, 176 So. 647, (La.App. Orleans 1937). The original debt must be extinguished in full before there can be a novation. *McConnell Motors Co. v. Succession of Tompkins*, 4 So.2d 566 (La.App. 1 Cir. 1941) (the original chattel mortgage note was not extinguished where evidence showed that the original note remained outstanding and enforceable, and the second note was merely evidence of the balance due thereon).

In the present case, the record is clear that the Arnolds did not cancel, mark "paid," release, or in any way intend to novate the first note or the mortgage securing it. Accordingly, novation did not occur. Mr. Hancock's assertion to the contrary is without merit. We find untenable Mr. Hancock's alternative argument that, even if novation of the first note did not occur, the second note and balances

due under it are unsecured.  If the first note, which is paraphed "Ne Varietur" and secured by the mortgage on the property described in the Act of Credit Sale, is not extinguished by novation, as we have found, then the loan is secured.

More specifically, Mr. Hancock calls the court's attention to La.Civ.Code art. 3325, which governs the paraph of notes or written obligations secured by a mortgage, privilege, or other encumbrance, and provides in pertinent part as follows:

> B. A notary before whom is passed an act of mortgage, or an act evidencing a privilege or other encumbrance that secures a note or other written obligation, shall paraph the obligation for identification with his act if the obligation is presented to him for that purpose.  The paraph shall state the date of the act and shall be signed by the notary.  The notary shall also mention in his act that he has paraphed the obligation.  Failure to do so shall render the paraph ineffective.  The paraph is prima facie evidence that the paraphed obligation is the one described in the act.

In the present case, the August 4, 1993 promissory note contains the notary's "Ne Varietur" stamp identifying the note with a mortgage of the same date.  Likewise, the Act of Credit Sale, dated August 4, 1993 and signed by the same notary, sets forth the same terms as those contained in the note and states that the note was "paraphed 'Ne Varietur' by me, Notary, to identify the same herewith. . . ." and indicates that the note was delivered and accepted by the vendors.  Accordingly, the requirements of La.Civ.Code art. 3325(B) are met.  Moreover, Mr. Hancock himself states that the first note, executed on August 4, 1993, is secured by the mortgage.  Again, where we find that the first note is not extinguished, the security provided by the mortgage as described in the 1993 Act of Credit Sale is still valid.  In other words, the loan is still secured.  The second note executed in 1998

12

rearranges the installments but it does not invalidate or extinguish the underlying obligation which is secured by the mortgage on the subject property.

Moreover, where the 1998 note also contains the notary's "Ne Varietur" stamp purporting to identify the note with the mortgage dated August 4, 1993, it is clear that the Arnolds intended that the second note be secured by the mortgage as well. Even if the paraph of the 1998 note is ineffective, which finding we pretermit, the attempt to paraph is further evidence that the Arnolds never intended to release the original note or the mortgage securing the debt. Likewise, Mr. Hancock's argument that the Arnolds made a mistake in allowing the novation negates his argument that intent was there. Mr. Hancock fails to clarify why he believes that the 1998 note is not also secured by the mortgage, except that he apparently ignores the paraph.

In any event, we do not have to decide the issue of security on the second note because the security on the first note was never released. There is only one debt, and it is secured by a special mortgage, lien, and privilege on the immovable property described in the 1993 Act of Credit Sale. The amount of the debt is to be calculated on the terms provided in the 1998 renewal note.

### Calculation of the Monetary Award

As a threshold matter, we note that the Arnolds' calculated the interest on the 1998 note for $129,756.75 using the simple interest method (charging 9.5% on the decreasing principal balance) as most commercial lenders do, for the first five payments that Mr. Hancock paid in a timely manner. However, when Mr. Arnold began paying late payments without including the late fees, the Arnolds began adding the late fees of $100.00 per month to the principal balance, and they calculated the next month's interest on the higher balance, causing Mr. Hancock to

13

pay interest on the late fees. Likewise, when Mr. Hancock stopped making payments altogether, the Arnolds added the unpaid late fees *and* the unpaid interest to the principal balance each month, such that the interest was calculated each month on an *ascending* balance. This is known as compounding interest, or charging *interest on interest.*

"Interest on interest is not favored in the law and should not be awarded absent express legislative authority." *Seals v. Morris*, 465 So.2d 140, 141 (La.App. 1 Cir. 1985). This is because the charging of interest on interest results in a higher rate than the rate stated on the note. Charging interest over and above the rate agreed upon can result in a usurious transaction and lead to a lender's forfeiture of the interest. *See* La.R.S. 9:3501. Louisiana Civil Code Article 2001, entitled "interest on interest" provides that, "[i]nterest on accrued interest may be recovered as damages only when it is added to the principal by a new agreement of the parties made after the interest has accrued." In the present case, neither the notes nor the Act of Credit Sale contained an agreement to compound the interest, and no new agreements were entered into after the interest accrued. However, our legislature has provided for exceptions to the laws on usury and the laws on interest upon interest, which apply in this case.

More specifically, La.R.S. 9:3503 provides that the amount of simple conventional interest on a note secured by a mortgage on immovable property cannot exceed twelve percent per annum. However, La.R.S. 9:3504 provides exemptions from the conventional rate limitation of twelve percent and from the interest on interest laws for various kinds of loans such as adjustable rate mortgages. Subsection (E) specifically provides that an obligation secured by a mortgage on immovable property where the mortgagee is the former owner of the property, may

14

bear an agreed upon rate that exceeds the conventional interest rate authorized by law, and in such case, a claim of usury is prohibited. It further provides that "in no instance shall the interest rate exceed seventeen percent." La.R.S. 9:3504(E).

In the present case, the rate quoted on the note is nine-and-one-half percent (9.5%), and that is the actual rate used by the Arnolds in calculating the interest portion of each payment. While the monthly *compounding* (adding to principal) of the unpaid late charges and interest increase the stated APR (annual percentage rate), it is clear that the actual rate charged did not exceed 17%. Using rounded figures for illustrative purposes, our calculations indicate that 17% interest on $126,000.00 (roughly the balance due after the last payment was posted in September 2001), is $1,785.00 per month. Fifty months later, at the time of trial, the total interest on $126,000.00 at 17% would be $89,250.00. In the present case, even after the late charge fees and interest were added to the balance and compounded monthly at 9.5% using the Arnolds' method of calculation, the total interest charged as of the time of trial, based upon our calculations, is $62,063.20, well under the amount calculated at 17%. Accordingly, the laws against charging interest on interest do not apply in this case.

Having said that, we have noted some mistakes in the trial court's calculation of the principal, interest, and late fees, and in the calculations made by the Arnolds, and we amend the award accordingly. First, the calculations made by the Arnolds, pursuant to their payment schedule in the record, indicate that they did not calculate the interest on a per diem basis, but rather charged one month's interest on every payment and posted it on the 15th of the month then due, no matter when they actually received the payment. This method was to the benefit of Mr. Hancock, and we have adhered to that method in our calculations. However, we note that prior

15

to posting the payment, the Arnolds' added the $100.00 late charge fee to the balance on the 15th of each month and calculated the entire month's interest on the higher balance that included the $100.00 late fee. According to the note itself, the 15th is the due date for each payment, and the late charge does not accrue until the payment is "over two weeks late," which is the 30th of each month. Therefore, part of each month's interest should be calculated on the lower pre-late-charge balance, and part should be calculated on the higher post-late-charge balance.

Using this method of calculation, we arrive at figures slightly lower than the Arnolds indicate, but higher over all than those awarded by the trial court, whose method of calculation is unclear. Accordingly, we make the following corrections in the award. The principal portion of the award is hereby changed from $126,326.46 to $126,077.71, which was the balance due after the last payment was posted on September 15, 2001, using our two-part interest calculation. Because this balance included all late charges posted as of that date, which we count at thirty-six, we delete the trial judge's award of an additional $3,500.00 for late charges, which appears to be her calculation of the late charges that had accrued as of September 15, 2001. Because they were already included in the balance, the charges should not be added again.

However, *after* the last payment on September 15, 2001, late charges continued to accrue until the time of trial fifty months later in November 2005, and the trial court did not include an award for those late fees. Accordingly, we award $5,000.00 in late charge fees from September 15, 2001 up to the time of trial. The interest portion of the award, representing interest from September 15, 2001 through trial on November 14, 2005, is hereby changed from $61,184.66 to $62,063.20. We

affirm the trial court's $2,407.65 award for insurance coverage, bringing the indebtedness due on the note to $195,548.56.

With regard to the attorney fees, the Arnolds requested 25% of the amount due on the note. However, the trial court awarded only $20,000.00, for 100 hours of work at $200.00 per hour. On appeal, Mr. Hancock's asserts that there was no proof of the work done and seeks a decrease in the attorney fees. In their brief to this court, the Arnolds defend the award of $20,000.00 but do not seek an increase. The Arnolds assert that over a twelve or thirteen year period, during which five foreclosures and a *dation en paiement* were attempted before the current suit was filed, and where bankruptcy proceedings were attended, there were clearly one hundred hours of work performed, thereby justifying the $20,000.00 award. We agree. We note that Mr. Hancock earlier argued that attorney fees were at the discretion of the court, but now complains that the court's award is too high. We believe that the trial court could have awarded more in attorney fees, but cannot say that she was clearly wrong in the amount awarded.

IV.

**CONCLUSION**

Based upon the foregoing, we affirm the portion of the judgment finding that the 1998 note did not extinguish, or act as a novation of, the 1993 note, and we affirm the portion of the judgment recognizing the Arnolds' special mortgage, lien, and privilege on the subject property. We further affirm the amount of $2,407.65 awarded for insurance coverage, and we affirm the award of $20,000.00 for attorney fees. However, we amend the principal portion of the award to $126,077.71, and amend the interest award to $62,063.20. We further amend the award of late fees, deleting the $3,500.00 awarded by the trial court and adding an award of $5,000.00

in late charge fees.  The total amount of the Arnolds' judgment against Mr. Hancock and their mortgage lien against the subject property is $215,548.56.

All costs are assessed to Donald S. Hancock.

**AMENDED AND, AS AMENDED, AFFIRMED**.